HEATH and others, Plaintiffs and Respondents, v. ZELLMER and another, Defendants and Respondents: MEYER and another, Impleaded Defendants and Appellants.

*April 14—June 30, 1967.*

580

582

584

586

For the defendants-appellants there was a brief by *Schlotthauer, Jenswold & Studt* and *Robert R. Studt,* all of Madison, and oral argument by *John F. Jenswold.*

For the plaintiffs-respondents there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and *Bernard U. Roels* of De Pere, and oral argument by *Mr. Roels.*

For the defendants-respondents there was a brief and oral argument by *Henry P. Hughes* of Oshkosh.

HEFFERNAN, J. The plaintiffs, the defendants, and the impleaded defendants all concur that *Wilcox v. Wilcox* (1965), 26 Wis. (2d) 617, 133 N. W. (2d) 408, governs the disposition of this case. The appellant, the host-driver of the Indiana car, takes the view that this is the reverse case of *Wilcox* and, since in *Wilcox* the Wisconsin host-guest relationship formed in Wisconsin remained significant, that the host-guest relationship in this case formed in Indiana is of controlling significance and must lead inexorably to the application of Indiana law. This view, however, takes into consideration only a single facet of the *Wilcox Case* and overlooks the analysis therein that demonstrated that the single contact with Nebraska, that the accident occurred there, was not relevant to any significant Nebraska policy and there was, in fact, no relevant conflict between the policies of Nebraska and the policies of Wisconsin.

In *Wilcox* we determined to put aside the "vested-rights" theory that eventually became incorporated and enunciated in the first Restatement's rule that substantive rights and liabilities arising out of a tortious act are to be resolved and determined by the law of the place where the tort occurred. In *Wilcox* we sought to outline a methodology that would rationally determine the rights of the parties and lead to the choice of law that had the most significant relationship to the facts. We therein cautioned that the methodology proposed was no rule of thumb—no *vade mecum*—that could be slapped down upon any set of facts and would reveal unequivocally and without some cerebration the proper choice of law to be followed.

In *Wilcox,* as here, Wisconsin was the forum, but the place of the accident was Nebraska, which allowed recovery from a host only when there was proof of gross negligence. Wisconsin, of course, permits recovery for

ordinary negligence. In that case the plaintiff and defendant were husband and wife (although this marital status played no part in the *Wilcox* rationale) and were Wisconsin residents whose host-guest relationship commenced in Wisconsin and was intended to terminate in Wisconsin upon completion of their round trip to California. Their automobile was licensed and garaged here, and the insurance was issued here. The fact that their one-car accident occurred in Nebraska was termed "fortuitous." On the basis of these facts we held that Nebraska's interest was so minimal that we need not be concerned with the policy behind its guest statute. We concluded that the umbrella of protection it afforded was to Nebraska hosts and insurers, and there were none in *Wilcox*. We also concluded that Nebraska's interest in furtherance of safety on its highways would not be served, since to apply Nebraska law would be to permit a lesser standard of care. An analysis of the Nebraska contacts led to the conclusion that no policy of Nebraska would be furthered by the application of Nebraska law. *Wilcox* was the easy case, whose facts showed only one contact with Nebraska—the fortuitous happening of a one-car automobile accident there. In effect, we found no meaningful conflict with Nebraska law.

To determine in this case whether a true conflict exists between the law of Indiana and Wisconsin,[3] the contacts of the event with these jurisdictions must be determined and the relevance of those contacts examined in light of the interests of the competing jurisdictions (although it should be borne in mind that what we seek at the end of our analysis is a choice of law or rule rather than a

---

[3] While Ohio conceivably has an interest herein since Eileen Meyer was a resident thereof, its law is the same as Indiana's and is not given separate consideration.

choice of jurisdictions, for the law of more than one jurisdiction could conceivably be applicable). *Wilcox v. Wilcox, supra,* page 631.

Indiana had the following substantial contacts with the case: The trip began in Indiana, and it was expected that it would end there. The relationship between Eileen Meyer and her mother and sister arose in Indiana and was expected to continue until their return there. The automobile used was owned by an Indiana resident (Eileen's father), and it was registered and insured there with an Indiana-domiciled company.

Wisconsin contacts are also formidable. The accident occurred in Wisconsin. Under the traditional *lex loci* rule this alone would have sufficed to carry the day for the plaintiffs-respondents and the impleaded defendants-appellants. The driver of the other automobile (a party to this suit) was a Wisconsin resident driving a Wisconsin-garaged-and-insured automobile. Moreover, the Meyer car, on its way back to Indiana after a stay in Wisconsin of several days, had three additional passengers, all residents of Wisconsin. It also appears from the pleadings that Eileen Meyer, who at the time of the accident was an Ohio resident, remained in Wisconsin thereafter and at the time of the suit had become a resident of Wisconsin.

Even a cursory inspection of the facts without any qualitative weighing, as *Wilcox* obliges us to indulge in, reveals a striking dissimilarity with the facts of *Wilcox.* If a qualitative analysis of these contacts, in light of the purposes or policies underlying the pertinent law of Indiana and Wisconsin, reveals a true conflict, this court is then obliged to make a choice of which law to apply.

Indiana's law requiring "wanton or wilful" conduct as a condition of liability to a guest evinces a desire to

(a) prevent collusive suits between hosts and guests;[4]
(b) prevent the ingratitude of the guest who sues his
kindly host (bites the hand that feeds him) ; (c) protect
the host from being obligated for more than he bargained
for (a judgment when he only offered a ride) ; and (d)
keep intact a fund (the host's assets) so it can be reached
by other parties to the accident whose claims are as-
sumed to have some vague moral priority over the
claims of the gratuitous guest.[5] It is clear that the policy
of the Indiana statute is to shield the host, and therefore
his insurer, from some liability. The lower standard of
conduct (a lesser duty) required in the host-guest situa-
tion is for the benefit of defendants.

The law of Wisconsin imposes liability in the host-
guest situation when there is proof of ordinary negli-
gence:

"It is the policy of our law to provide compensation to
a person when he has been negligently injured. The
reasons for this policy are manifold. Among them are
that the wrongdoer should bear the cost of an injury
because of his causal fault and not the injured party
(unless he is equally at fault) or the state authorities or
those who have furnished medical services, and that to the
extent that damages in a negligence action are punitive,
it is hoped that the burden of a judgment may deter like
conduct by others." *Wilcox v. Wilcox, supra,* page 631.

The purposes of the Wisconsin law are compensatory,
admonitory, and deterrent.

While, arguably, the Indiana law seeks to serve those
same purposes, it does not do so in the host-guest situa-

[4] To the extent that Indiana policy is to prevent collusive suits,
that policy is irrelevant since it is the court of the forum, ir-
respective of where that may be, that is in part at least victimized
by a collusive suit.

[5] A policy factor that the New York court of appeals saw be-
hind the Colorado host-guest statute in *Dym v. Gordon* (1965),
16 N. Y. (2d) 120, 209 N. E. (2d) 792, 262 N. Y. Supp. (2d) 463.

tion unless the conduct is "wanton or wilful." It is perhaps hyperbole to say that Indiana law encourages a host to subject his guest to all risks short of conduct that is "wanton or wilful," but it is nonetheless true that under Indiana law the host who is merely guilty of ordinary negligence is relieved of all obligation to compensate his injured guest victims. In Wisconsin the law in its compensatory attributes is brought into play by the finding of ordinary negligence in a host-guest relationship.

On the basis of this analysis it is apparent that the application of either Indiana or Wisconsin law arguably could be justified. Each state has numerous significant contacts with the tort and its consequences, and each has important policies that it believes will be furthered by the application of its law. In this case the choice of law is outcome-determinative of the case. In the event Indiana law is used, the guests who traveled with Miss Meyer from Indiana will not be compensated by their negligent host and the deterrent factor that Wisconsin law attributes to damages for negligent conduct will not be imposed upon the driver. Moreover, the Wisconsin driver of the second car, if found negligent in causing the injuries to the passengers in the Meyer car, will not be entitled to contribution from the other negligent tortfeasor since no common liability would then exist. If Indiana law is applied, those policies favored in the Wisconsin law will suffer. In the event Wisconsin law is applied, the kindly host and his Indiana insurer, the objects of the bounty of the Indiana guest law, will suffer or at least be answerable in damages.

Thus, a true conflict arises in the instant case unlike the situation in *Wilcox,* where only Wisconsin had any real interest in the outcome of the case and only its policies could be furthered or impaired by the choice of law made. In *Wilcox* no important Nebraska policy was involved.

*Resolving the conflict—the choice-of-law process.*

Various methods have been proposed for determining the choice of law. In *Wilcox, supra,* page 634, we stated:

"We start with the premise that if the forum state is concerned it will not favor the application of a rule of law repugnant to its own policies, and that the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance."

While this statement gives some guide in the choice of law, it does not resolve that choice when the greater significance of foreign contacts is not absolutely clear. Nor does it mean that foreign law will be applied even though the contacts with a foreign jurisdiction are quantitatively overwhelming, for, if the foreign jurisdiction's contacts are less relevant qualitatively or if the foreign law is truly repugnant to Wisconsin policy, the effectuation of Wisconsin policy may be the most decisive element (*e.g.,* it is difficult to imagine a Wisconsin court enforcing a contract of prostitution no matter how overwhelming the contacts of the parties and the contract might be with a hypothetical jurisdiction that permitted such an agreement). The *Wilcox Case,* although pointing to a methodology for making a choice of law where a conflict exists, was primarily pointed to the *Wilcox* determination, *i.e.,* does a serious conflict in fact exist?

In the past some jurisdictions which were dissatisfied with the place-of-wrong as a determinant of the applicable rule, when it appeared that a conflict existed, chose to "characterize" the problem so as to fit it into a niche of the law that would give a more satisfactory result. For example, this court in *Haumschild v. Continental Casualty Co.* (1959), 7 Wis. (2d) 130, 95 N. W. (2d) 814, obviated the conflict between the law of Wisconsin and the law of California by holding that the question of interspousal immunity was a question of family law and

not of tort law. We said, ". . . the law to be applied is that of the state of domicile." *Haumschild, supra,* page 138.[6]

In *Grant v. McAuliffe* (1953), 41 Cal. (2d) 859, 264 Pac. (2d) 944, the California court characterized the foreign law as procedural and thus escaped the application of the place-of-wrong rule, which required the use of the substantive law of the place of the tort.

Since *Babcock v. Jackson* (1963), 12 N. Y. (2d) 473, 240 N. Y. Supp. (2d) 743, 191 N. E. (2d) 279, 95 A. L. R. (2d) 1, the case which decisively initiated the trend away from the rule of *lex loci,* legal commentators have sought some method that preserves the certainty of the old rule and the rationality of the "center of gravity"—"grouping of contracts"—"most significant interest" series of cases that followed it. They have not succeeded, nor is it likely that they will. As was said in *Wilcox, supra,* page 635:

"It is not to be expected, however, that this approach will provide the *vade mecum* for the quick sure answer provided heretofore by *lex loci* and the theory of vested rights."

Nevertheless, a court should be expected to approach conflicts problems in a consistent manner so that its decisions will not only have precedential value for its own decision making but also can serve as a guide to the bench and bar as well. For opinions to serve that purpose, they must be based upon expressed reasons and upon standards or considerations that are consistently employed in the analysis of conflicts problems.

---

[6] It is apparent that under *Wilcox* the place of domicile is no longer *ipso facto* controlling in a family-law case. It becomes one of the factors or contacts to be weighed in assessing the relevance of the law to be applied. Domicile alone, though in some cases it may well be the decisive factor, should not even in interspousal suits be the invariable jurisdiction or law-selecting criterion. See *Brunke v. Popp* (1963), 21 Wis. (2d) 458, 461, footnote 1, 124 N. W. (2d) 642, recognizing the application of the most significant relationship criterion in resolving *Haumschild, supra.*

Various writers have summarized the considerations relevant in making a choice of laws, *e.g.,* Cavers, The Choice-of-Law Process (1965), University of Michigan Press; Leflar, Choice-Influencing Considerations in Conflicts Law, 41 New York University Law Review (1966), 267; Leflar, Conflicts Law: More on Choice-Influencing Considerations, 54 California Law Review (1966), 1584; Cheatham & Reese, Choice of Applicable Law, 52 Columbia Law Review (1952), 959.

While the considerations put forth as relevant by all the commentators are helpful in making a choice of law, we are obliged to avoid those that represent the Scylla of new jurisdiction selecting rules and the Charybdis of those whose latitude is so boundless as to be no guide at all. The latter, while philosophically sound, are of little help to the busy judge or lawyer, and the former, though tranquilizing in their assuring certainty, are perilously close to the ossified rules of *lex loci* that we have so recently rejected.[7]

We deem that the considerations suggested by Robert Leflar combine a workable brevity with a reasoned

---

[7] Though obviously based on a far more rational underpinning than the law of *lex loci,* one of such rules proposed by Cavers and which would be applicable to the instant case is stated thus:

"Where the liability laws of the state of injury set a higher standard of conduct or of financial protection against injury than do the laws of the state where the person causing the injury has acted or had his home, the laws of the state of injury should determine the standard and the protection applicable to the case, at least where the person injured was not so related to the person causing the injury that the question should be relegated to the law governing their relationship." Cavers, *supra,* page 139.

The application of this rule would lead to the same result as reached in this case. When considered in the context of the treatise in which it appears, it is a helpful guide to a choice of law. When considered as a separate rule, as apparently its author intends it to be used, it has the potentiality of rigidity, and is subject to exception that is understandable only after the author's extended explanation. In short, it offers neither the pat answer, nor is it in itself a flexible rationale.

analysis, and we conclude that when faced with a choice-of-law decision, this court should base its conclusions upon the following choice-influencing considerations (see Leflar, *supra*, 41 New York University Law Review, 267, 282):

Predictability of results;
Maintenance of interstate and international order;
Simplification of the judicial task;
Advancement of the forum's governmental interests;
Application of the better rule of law.

Predictability is one of the choice-influencing considerations that deserves special emphasis in *consensual* arrangements. In those cases, since a legal relationship is entered into by prearrangement, it is imperative that the parties know that their rights will be the same, irrespective of the forum, and that their agreement will have the same consequences, irrespective of where the contract is performed or where a dispute in regard to it is resolved. Predictability is an essential in the law of wills, descent and distribution, trusts, contracts, land titles, and conveyancing. It has little or no relevancy to an automobile accident or other tort that was never intended or planned.

Another choice-influencing consideration is the maintenance of interstate and international order. This means that no state should impose its law in a situation when its parochial rules would unduly and without substantial reason so impinge upon another state as to interfere with the free flow of commerce or the exercise of another state's legitimate policies in such a manner that would invite retaliation from another jurisdiction. Deference to the substantial interests of another state are necessary and for a state that is only minimally concerned with a transaction or tort to thrust its law upon the parties would be disruptive of the comity between states. A state whose interest is negligible should not attempt to dis-

place the law of a state whose interest is substantial, and the choice of law should not be a mere forum preference in disregard of the competing rationales behind diverse foreign and forum laws. One of the functions of the law of conflicts is to make sure that relations between the states and commerce between them is harmonious and equitable to the parties concerned while still preserving the integrity of forum law.

Whatever other factors might favor the adoption of a foreign rule, a court will not lightly consider a rule that will complicate its task or make the process of case deciding more onerous for itself or for the bar of its state. A simple and easily applied rule of substantive or procedural law is to be preferred, but simplicity may well be outweighed by other considerations—*e.g.*, the displacement of the simplistic rule of *lex loci* by the *Babcock-Wilcox* rationale. In the automobile-accident case this test is likely to be of minimal importance, since none of the tests used elsewhere would be likely to impose an unmanageable complexity upon a case tried in Wisconsin. Nevertheless, a court's task is rarely simplified when the lawyers and judges must apply themselves to foreign rather than forum law.

Though we have said in *Wilcox* that the forum law is presumptively applicable unless there are nonforum contacts that are of greater significance, yet, even when we are confronted with the law of another jurisdiction and that jurisdiction is admittedly a "concerned jurisdiction" as determined by our analysis of relevant contacts, forum law should continue to be a primary concern of the forum court for "Courts are instruments of state policy . . ." (*Wilcox, supra,* p. 633), and it is the duty of a Wisconsin court to identify and effectuate Wisconsin policies. This is not to say that the furtherance of the state's interest always requires the invocation of the forum law. In the particular case the law that may best

serve the interest of the state as a justice-seeking juris-
diction may be a nonforum law (*e. g.*, a court confronted
with an anachronistic court-made law of the forum that
defeated rather than advanced the forum's interest might
well, if facts otherwise justified such action, select non-
forum law). Leflar, 41 New York University Law Re-
view, 267, 293, has defined governmental interest as:

". . . includ[ing] all the relevant concerns that the
particular government, not only as a sovereign entity but
also as a repository of justice, may have in a set of facts
or an issue."

The question in private litigation, such as in an auto-
mobile-accident case, is whether the proposed nonforum
rule comports with the standards of fairness and justice
that are embodied in the policies of the forum law. If it
appears that the application of forum law will advance
the governmental interest of the forum state, this fact
becomes a major, though not in itself a determining,
factor in the ultimate choice of law.

Another choice-influencing consideration that must
inevitably influence the decision of a court is its search
for the "better law"—one that to the court appears to
present the sounder view of the law in light of the
socioeconomic facts of life at the time when the court
speaks. This is, of course, the way common-law courts
have always operated. If the way is open to them, courts
will select the law that most adequately does justice to
the parties and has the greatest likelihood of being ap-
plicable with justness in the future. A court faced with
the choice between laws and in a situation where it has
the freedom to make that choice will, by the very nature
of its common-law heritage of reason, select that law,
whether of its forum or of another state, which meets the
test of being the "better law" under the circumstances.
Mr. Chief Justice KENISON, employing the analysis sug-
gested by Professor Leflar and speaking for the New

Hampshire court, stated the objective of this consideration in making the choice of a rule of law:

"We prefer to apply the better rule of law in conflicts cases just as is done in nonconflicts cases, when the choice is open to us. If the law of some other state is outmoded, an unrepealed remnant of a bygone age, 'a drag on the coattails of civilization,' (Freund, Chief Justice Stone and the Conflict of Laws, 59 Harv. L. Rev. 1210, 1216 (1946)), we will try to see our way clear to apply our own law instead. If it is our own law that is obsolete or senseless (and it could be) we will try to apply the other state's law." *Clark v. Clark* (1966), 107 N. H. 351, 222 Atl. (2d) 205, 209.

Leflar, *supra*, 54 California Law Journal, 1584, 1588, emphasizes that the choice is an objective one and is based not upon preferred parties but upon preferred law. This is, of course, the way any court worth its salt selects the law it uses.

In light of these considerations, our choice of which law to apply, Wisconsin's or Indiana's, becomes fairly manageable.[8]

In an automobile-accident case the choice of law is not always foreordained from the time a trip is started (though it might be, as in *Wilcox*, when the significant fact was the relationship formed at the outset in Wisconsin and there were only incidental and irrelevant factors or contacts to consider thereafter). It is not until all the facts are available, following the accident, that a lawyer can be expected to assess the contacts and with reasonable certainty determine the likelihood that the law of one state or of another will be applicable. This is because the first criterion—predictability of legal results —is not applicable to an automobile accident that obviously is not planned in advance. This is no different than it was under *lex loci*, where what law was eventually applied was the result of the fortuitous occurrence of the

---

[8] In *Wilcox* only one jurisdiction was truly concerned and, hence, the extended choice analysis was unnecessary.

accident in a particular place and was undeterminable until that time.

Nor do we see that the second choice-influencing consideration is of particular relevance under the facts of this case. Wisconsin's contact with the case is substantial (as is Indiana's), and it cannot be said that the imposition of Wisconsin law is mere parochialism or a blind preference for forum law in derogation of Indiana law. Wisconsin is more than just nominally concerned. Its interests are real interests, but in this case so are Indiana's, and the flow of commerce between the states and interstate comity are in nowise jeopardized by the selection of either Indiana or Wisconsin law. Neither choice would be totally unreasonable.

The courts of this state, due to their familiarity with the law of Wisconsin, would find it somewhat simpler to apply, yet the "wanton or wilful" test of Indiana could be applied easily by any Wisconsin lawyer or judge. While its application might result in a problem in administering the contribution aspect of the case, for the "wanton or wilful" test would exonerate the "ordinarily negligent" host from the obligation to contribute to a judgment against a joint tortfeasor, this is not a problem that would tax Wisconsin lawyers and judges, for until recently it was not uncommon in Wisconsin for one party to a lawsuit to be negligent but insulated from liability because of a familial or governmental immunity. The problems that might arise were we to apply Indiana law, thus barring other defendants from contribution rights, are readily manageable under existing Wisconsin legal techniques.

It is the duty of our court to further Wisconsin's governmental interests as exemplified in the policies behind its law. The policy of our tort law is to provide compensation for persons who are injured by negligent conduct. The application of Indiana law will defeat that purpose. The Indiana passengers in the host's automobile

would be denied recovery, though the severity of their injuries and the expense incurred thereby are not dependent upon whether the negligence was "ordinary" or what Ohio and Indiana denominate as being "wanton or wilful." To deny recovery for ordinary negligence is to defeat Wisconsin's policy of compensating victims of ordinary negligence. It is the policy of Wisconsin to provide compensation to those persons whether they be residents of this state or whether they come from another jurisdiction. To deny nonresidents recovery for damages occasioned by the same tort that creates liability to a resident would not only defeat Wisconsin's policy and its governmental interest, but could perhaps be challenged as a denial of equal protection of the laws to nonresidents. While residents might well be more likely to become public charges if uncompensated for their injuries, it is in the governmental interest of the state of Wisconsin to see to it that all persons who are negligently injured within its borders are able to pay for medical treatment they receive here and that they do not become objects of public charity here or elsewhere. Moreover, the tortfeasor's conduct occurred on the highways of Wisconsin; and if we are to insulate him from the deterrent effect of a judgment arising out of the consequences of negligent driving, we then say as to him, at least in the host-guest situation, that he can with civil impunity be ordinarily negligent upon our highways. On the other hand, the negligent Wisconsin host with a Wisconsin guest will be subject to liability to his guest. And in this case the Wisconsin driver, if Indiana law were used, would also be liable for all the injuries sustained by the guests in the Meyer car, with no opportunity to seek contribution from their negligent host, Eileen Meyer, even though it might be her negligence that was the principal cause of the accident. This would defeat Wisconsin's policy of spreading losses and assessing damages against all tortfeasors in proportion to their causal negligence. To

employ Indiana law in this instance would remove the deterrent effect of our law of negligence, while the choice of Wisconsin law would further this state's interest in regulating conduct on Wisconsin highways and penalizing that conduct when it is negligent. It would promote safe driving on Wisconsin highways.

We also conclude that Wisconsin's law is the "better law" to apply under the circumstances. For the reasons set forth in the preceding paragraph, the application of the rule of ordinary negligence, rather than gross negligence or "wanton or wilful" conduct, makes better socioeconomic sense in modern America. It is the sounder law. The Indiana law is an anachronism.

Willard H. Pedrick (Taken for a Ride: The Automobile Guest and Assumption of Risk, 22 Louisiana Law Review (1961), 90, 91) summarized the origins and effect of the so-called guest statutes:

"At an early stage in automobile litigation and at a time when automobile insurance companies were concerned with limiting their function as far as possible a strange alliance between insurers and farm groups secured passage in a large number of states of the 'automobile guest statutes.' These statutes resulted from hitchhiker suits against uninsured or underinsured drivers and intra-family suits against insured defendants were aimed at relieving the driver (and his insurer) from liability save for the most horrendous performances at the wheel. Commonly phrased in terms of a requirement that the guest establish that the driver was 'wilful,' 'wanton,' 'grossly negligent,' or even 'wilfully negligent' as a prerequisite to recovery by the guest, these statutes do in fact represent a formidable obstacle to recovery by the guest.

"It is a tribute to the lobby system of legislation that in this country a surgeon operating on a charity patient is bound to exercise ordinary care but is permitted, should he drive his patient home from the hospital, to abandon that standard and be subjected to liability only on proof of gross negligence or wilful and wanton misconduct."

Leflar, Choice-Influencing Considerations in Conflicts Law, 41 New York University Law Review, 267, 278, points out that in those states that have, in years past, adopted guest statutes, such statutes by judicial action are less rigorously applied than formerly and are subject to increasing criticism (see The Ohio Guest Statute, 22 Ohio State Law Journal (1961), 629).

The Wisconsin supreme court has joined in the refusal to apply the guest-statute rationale. In *McConville v. State Farm Mut. Automobile Ins. Co.* (1962), 15 Wis. (2d) 374, 384, 113 N. W. (2d) 14, Mr. Justice THOMAS FAIRCHILD, speaking for the court, stated:

"Defense counsel calls attention to the so-called guest statutes in many other states, denying recovery to a guest unless the host is guilty of something more than ordinary negligence. . . . Suffice it to say that the Wisconsin legislature has never made the policy judgment made by the legislatures of these other states in adopting such statutes, and we ourselves would not make such policy judgment. We are of the opinion that the new rule [abolition of assumption of risk as an absolute defense to negligence] announced herein is more in harmony with the principle of comparative negligence adopted by our legislature than was the former rule."

"Guest laws" are not consistent with the present-day conditions in the field of motor-vehicle control and automobile-accident law. Mr. Chief Justice KENISON in *Clark v. Clark, supra,* page 210, stated that:

"Legislative persuasion was largely in terms of guest relationships (hitchhikers) and uninsured personal liabilities that are no longer characteristic of our automotive society."

Leflar, *supra,* 54 California Law Review, page 1595, stated that:

"The hitch[h]iker era that produced them is past, and current feeling is that they are both unfair to guests and

contrary to the enterprise liability, spread-the-loss concept that prevails in the automobile tort area today."

We are satisfied, given the choice, as we are in this case, between the application of Wisconsin's rule of ordinary negligence and the Indiana (and Ohio) standard of "wanton or wilful" conduct, that Wisconsin's law is the "better law."

We thus conclude that an analysis of the choice-influencing considerations lead to the choice that Wisconsin law should be the law applied in this case. Its application, since Wisconsin is a state that has substantial and relevant contacts with the tort and its consequences, will not disrupt interstate comity or harmony within the federal union. The governmental interests of the state of Wisconsin, the forum state, as reflected in its laws of negligence, will be furthered by the application of Wisconsin law and hindered if the law of Indiana were to be applied; and irrespective of the governmental interests of Wisconsin and its citizens, we deem the standard of ordinary care to be exercised in the host-guest case in Wisconsin to be a superior and better standard from a socioeconomic viewpoint, more consonant with present-day thinking than the outmoded "model-T" guest statute as it exists in Indiana and Ohio. Given these conclusions we find no other state more significantly concerned than the Wisconsin forum. On the issue then of the standard of care owed by the host to his guests on the facts of this case we see no reason to displace the forum's policy. Eileen R. Meyer, under the circumstances set forth herein, was subject to the Wisconsin rules of negligence and, if it is proved that her conduct constituted lack of ordinary care, must respond in damages to her guests.

The order denying the impleaded defendants' motion for summary judgment was properly denied.[9]

---

[9] Inasmuch as we have affirmed the lower court's determination denying the motion for summary judgment, we have not discussed

*By the Court.*—Order affirmed, and the cause is remanded for further proceedings not inconsistent with this opinion.

respondents' contention that the motion was not timely brought. In any event, under the circumstances, it is not clear that the trial court abused its discretion in hearing the motion.

