**Vicki OWEN, Plaintiff and Appellant,**

v.

**Ronald E. OWEN, Defendant and Appellee.**

**No. 16481.**

Supreme Court of South Dakota.

Argued May 23, 1989.

Decided Aug. 2, 1989.

Mary Poulas of Gunderson, Palmer, Goodsell & Nelson; G. Verne Goodsell of Gunderson, Palmer, Goodsell & Nelson, Rapid City, on brief, for plaintiff and appellant.

Craig A. Pfeifle of Lynn, Jackson, Shultz & Lebrun, Rapid City, for defendant and appellee.

MORGAN, Justice.

Vicki Owen (Vicki) appeals from an order dismissing her negligence cause of action against Ronald Owen (Ronald). We reverse and remand.

Ronald and Vicki Owen are husband and wife. On March 6, 1986, Ronald was driving a 1967 Ford van near Gas City, Grant County, Indiana. Vicki and her two children were passengers in the van. Ronald lost control of the van, skidded off the road, and hit a utility pole. Vicki suffered a broken hip and fractured left femur. As a result, she was hospitalized from March 6, 1986, until August 19, 1986, and continues to have ongoing medical treatment. At the time of the accident, the parties were South Dakota residents, temporarily residing in Indiana to complete Ronald's higher education. Vicki is a life-long resident of South Dakota, and both parties lived in South Dakota for six years prior to returning to school. They owned a home in Sturgis, South Dakota, and, while in Indiana, continued to pay South Dakota property taxes. Both parties licensed their vehicles in South Dakota and held South Dakota drivers licenses. They voted in South Dakota by absentee ballot during the Presidential election and if there was a local election at the time they were in South Dakota during college vacations, they would vote. It was always the parties' intent to return to their home and live in South Dakota after Ronald completed his education. Both parties have, in fact, returned to South Dakota and reside in their home in Sturgis.

Vicki filed a complaint in South Dakota alleging Ronald was negligent in operating the van. Ronald filed an answer admitting the accident, but denying any negligence

on his part. Additionally, Ronald moved to dismiss the complaint for failure to state a cause of action upon which relief could be granted. A hearing was conducted where the court admitted, without objection, an offer of proof made by Vicki concerning the parties' contacts to South Dakota. The trial court dismissed Vicki's complaint, holding that the doctrine of *lex loci delicti* requires that Indiana law apply to this cause of action. Furthermore, it held that the Indiana guest statute requires Vicki to allege and prove willful or wanton misconduct. Since Vicki failed to properly plead, her complaint was dismissed. She appeals.

On appeal, Vicki contends that this court should abandon the *lex loci delicti* or "the place of the wrong" rule in multi-state tort actions or in the alternative, adopt a public policy exception to the rule. She argues further, that the application of the Indiana guest statute in South Dakota is unconstitutional.

We first define our standard of review. A motion to dismiss pursuant to SDCL 15–6–12(c) provides an expeditious remedy to test the legal sufficiency of pleadings. *Akron Savings Bank v. Charlson*, 83 S.D. 251, 253, 158 N.W.2d 523, 524 (S.D.1968). This court "must treat as true all facts properly pleaded in the complaint." *Id.* We deal only with the questions of law arising thereon. *Id.*

 South Dakota has consistently followed the *lex loci delicti* rule in multi-state tort actions. In *Heidemann v. Rohl*, 86 S.D. 250, 260, 194 N.W.2d 164, 169 (1972), plaintiff, the special administrator for the estate of the deceased who was a resident of South Dakota, sued the owner of an airplane in which deceased was killed when it crashed near Anselmo, Nebraska. The airplane was enroute, nonstop, from Colorado Springs, Colorado, to its destination of Sioux Falls, South Dakota, when it crashed in Nebraska. This court was faced with the question of whether South Dakota or Nebraska law applied to an imputed negligence claim against the owner. After reviewing the rules adopted in other jurisdictions in determining conflict or choice of law questions, this court adopted the *lex loci delicti* rule. Heidemann was allowed to maintain an imputed negligence action under the Nebraska law, whereas South Dakota law would not have permitted the cause of action.

This court has continued to apply the *lex loci delicti* rule to the substantive rights of parties in multi-state tort actions. *See First Nat'l Bank of Minneapolis v. Kehn Ranch*, 394 N.W.2d 709 (S.D.1986); and of special interest, Justice Sabers' opinion in *Schick v. Rodenburg*, 397 N.W.2d 464 (S.D. 1986). Vicki urges this court to overrule these cases and adopt a "modern" or "most significant relationship" rule. In support of her position, she cites decisions from as many as thirty-two states that apply either the "modern" rule or the *lex loci delicti* public policy exception.

Many of the decisions Vicki cites, along with the seminal decision formulating the "modern" rule, *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), were available to this court when it reviewed the issues in *Heidemann*. After a careful review of the "modern" rule, this court adopted the *lex loci delicti* rule.

In adopting the *lex loci delicti* rule, this court noted the problems inherent in the "modern" rule.

> Although there is dissatisfaction with the *lex loci delicti* rule there is also a reluctance on the part of many courts to adopt the modern fragmented approach to the settlement of multi-state conflict of laws problems because of the lack of discernible and suitable guidelines. For the most part the variants of the modern approach set forth theory and concepts rather than followable rules. As a result there is considerable confusion and inconsistency in its application.

86 S.D. at 259, 194 N.W.2d at 169. Because of these inherent problems, we preferred "to retain the traditional 'place of wrong' rule with its built-in virtues of certainty, simplicity, and ease of application." *Id.*

Vicki contends that the age of *Heidemann* requires this court to review the *lex loci delicti* rule and abandon it for the

"modern" rule. We are not persuaded. The same concerns this court had in *Heidemann* remain today. Application of the "modern" rule results in confusion and inconsistency. *See* Currie, *Comments on Reich v. Purcell*, 15 UCLA L.Rev. 511, 595–97 (1968), for a discussion of how post-*Babcock* decisions in New York have "hopped frenetically from theory to theory like an overheated jumping bean ... producing contradictory results in practically identical cases."

Next, Vicki contends that if we do not abandon our *lex loci delicti* rule, we should adopt a public policy exception to the rule. She argues that application of Indiana's guest statute, IND. CODE ANN § 9–3–3–1 (Burns 1988),[1] which prevents an injured spouse from recovering compensation from a negligent host unless she can demonstrate wanton or willful misconduct, violates South Dakota public policy and should not be enforced. Under the particular facts of this case, we agree and create a limited public policy exception to *lex loci delicti.*

First, we note that the *lex loci delicti* rule in the field of torts has long admitted two exceptions:

(1) The law of the forum, lex fori, was applied to procedural matters, and (2) the law of the forum was controlling whenever the law of the place of the wrong was contrary to an extraordinarily strong public policy of the forum state.

16 Am.Jur.2d *Conflicts of Law* § 101 (1979).

The reasons that a foreign jurisdiction's law would be contrary to public policy were succinctly explained by the Supreme Court of Tennessee in *Whitlow v. Nashville C. & St. L.R. Co.*, 114 Tenn. 344, 347, 84 S.W. 618, 621 (1904):

To justify a court in refusing to enforce a right of action which occurred under the law of another state, because it is against the policy of our laws, it must appear that it is against good morals or natural justice, or that, for some other such reason, the enforcement of it would be prejudicial to the general interest of our citizens.

*Accord Winters v. Mazey,* 481 S.W.2d 755, 756 (Tenn.1972).[2] Several courts have used this standard to grant public policy exceptions to *lex loci delicti.* A review of these decisions is useful.

In *Schmidt v. Driscoll Hotel, Inc.*, 249 Minn. 376, 82 N.W.2d 365 (1957), a Minnesota plaintiff brought suit against a Minnesota bar owner, who violated Minnesota's dram-shop statute by selling liquor to an intoxicated Minnesota resident. This patron subsequently injured plaintiff in a car wreck in Wisconsin. There was no equivalent dram-shop statute in Wisconsin. Application of Wisconsin law under the *lex loci delicti* rule meant that plaintiff could not recover against the bar owner. In overturning the lower court's dismissal for failure to state a cause of action, the Minnesota Supreme Court held that the parties significant contacts with Minnesota (all parties were Minnesota residents; defendant bar owner was licensed under Minnesota law) coupled with Wisconsin's interest in preventing foreign violations of liquor laws, justified applying Minnesota law under the "principles of equity and justice." *Id.* at 368.

---

1. IND.CODE ANN § 9–3–3–1(b) (Burns 1988) provides:
 (b) The owner, operator, or person responsible for the operation of a motor vehicle is not liable for loss or damage arising from injuries to or the death of:
 (1) his parent;
 (2) his spouse;
 (3) his child or stepchild;
 (4) his brother;
 (5) his sister; or
 (6) a hitchhiker;
 resulting from the operation of the motor vehicle while the parent, spouse, child or step-

child, brother, sister, or hitchhiker was being transported without payment therefor in or upon the motor vehicle, unless the injuries or death are caused by the wanton or willful misconduct of the operator, owner, or person responsible for the operation of the motor vehicle. *As amended by P.L. 68–1984, SEC.2.*

2. This court is aware that the *Winters* decision found that an Alabama guest statute did not violate Tennessee's public policy. We, however, are not bound by that holding and do not agree with its reasoning.

Likewise, in *Gordon v. Parker*, 83 F.Supp. 40 (D.Mass.1949), *aff'd*, 178 F.2d 888 (1st Cir.1949), a Massachusetts court refused to follow the *lex loci delicti* rule in a suit for alienation of affection. Plaintiff and his wife were domiciled in Pennsylvania, arguably where the harm to marital domicile occurred, but the defendant's wrongful acts with the wife occurred in Massachusetts. Pennsylvania no longer recognized alienation of affection as a cause of action, but Massachusetts did. Reasoning that Massachusetts had an interest in controlling conduct that lowered the standards of the community, the court refused, under a public policy exception to *lex loci delicti*, to enforce Pennsylvania law. *Id.* at 42.

■ Similarly, enforcing Indiana's guest statute against citizens of this state runs contrary to the strong public policy established by our legislature, thereby lowering a standard of protection it intended for injured passengers.

To understand our reasoning, it is necessary to retrace the demise of the South Dakota guest statute. For many years, this court noted injured plaintiffs' displeasures with the guest statute, SDCL 32-34-1 (repealed in 1978), but held that it was up to the legislature, not the court, to change the law. *Behrns v. Burke*, 89 S.D. 96, 229 N.W.2d 86, 90 (1975).

Reacting to our decisions, the legislature, in 1978, repealed the guest statute, subject to a public referendum of approval.[3] The new standard of care owed injured passengers by a host became "want of ordinary care or skill." SDCL 20-9-1.

And while Indiana is free to enforce its guest statute against its own citizens, South Dakota is certainly not obligated to follow a statute that runs so contrary to its public policy. The legislature intended that an injured passenger be allowed to recover against a host under a theory of simple negligence. To enforce Indiana's guest statute in an action between two of our own citizens, who were only temporarily in

Indiana, is against "natural justice" as well as "prejudicial to the general interest of our citizens." *Whitlow*, 84 S.W. at 621.

■ Further, we believe the parties' contacts with this state warrants applying South Dakota law. Other than the fortuitous event of the accident occurring in Indiana, the parties' contacts are with South Dakota. Both parties are long-time residents of this state; they owned a home in South Dakota and paid property taxes in this state; they registered their vehicles in South Dakota and held South Dakota drivers licenses; they voted in South Dakota elections; they both intended to return to South Dakota to live and in fact have returned after the accident. All of these factors convince us that Vicki is not a plaintiff who is forum shopping, but, rather, a life-long resident entitled to the protection of this state's law.

Indiana's interests in this matter are minimal. This is not an issue of enforcing Indiana's rules of the road. Instead, this court must decide whether Vicki, because she is a guest, is barred from seeking redress for a wrong committed. The accident may have occurred in Indiana, but it has no interest in seeing its guest statute applied to our citizens.

Allowing this limited public policy exception to *lex loci delicti* maintains the certainty, simplicity, and ease of application we discussed earlier, while providing a means to avoid applications that are repugnant to the public policy of our state.

Having ruled that Indiana's guest statute violates our public policy and will not be enforced, it is not necessary to address Vicki's constitutional objection.

We reverse and remand.

WUEST, C.J., concurs.

HENDERSON, SABERS and MILLER, JJ., concur specially.

---

**3.** S.D.Sess.L. ch. 240, § 1. The referendum petition never received the number of valid signatures required, so the repealer became law on July 1, 1978. *Nist v. Herseth*, 270 N.W.2d 565 (S.D.1978).

MILLER, Justice (concurring specially).

I am pleased to see an erosion of the *lex loci delicti* rule but strongly assert that the majority does not go far enough. By adopting the public policy exception, the majority brings South Dakota's conflicts of law approach out of the middle ages. I believe we should now enter the twentieth century by joining the vast majority of states in abolishing *lex loci* completely and adopting an approach which best suits these modern times.[1]

Before proceeding further with this special writing, I will explain that I will give my "bottom-line" first and then state my reasons. This will hopefully make my rationale easier to follow. In my extensive research I was surprised to find the voluminous writing that has been done on this subject by countless judges, scholars, law students and other legal authors.[2] I have attempted to give thoughtful, objective analysis to the subject and believe that the following solution is in the best interests of the citizens and law of our state.

## SOLUTION

### SOUTH DAKOTA SHOULD ADOPT THE "CHOICE–INFLUENCING CONSIDERATIONS" APPROACH WHEN FACING CHOICE–OF–LAW CONFLICTS.

### RATIONALE

As I see it, we have three alternatives: (1) Remain with the few jurisdictions that retain *lex loci;* (2) Follow the majority's approach and make a piecemeal, ad hoc erosion of *lex loci;* or (3) Join the vast

---

1. As of 1989, thirty-three states, plus the District of Columbia and Puerto Rico, have displaced *lex loci delicti* in part or in whole.

2. For example:
 Hancock, Studies in Modern Choice-of-Law: Torts, Insurance, Land Titles (1984);
 Leflar, Conflict of Laws (1959);
 Martin, Perspectives on Conflict of Laws (1980);
 Scoles and Hay, Conflicts of Law, Hornbook Series (L.Ed.1984);
 Weintraub, Commentary on the Conflict of Laws (1980);
 Carteau, Comments: Conflicts of Law and Successions: Comprehensive Interest Analysis as a Viable Alternative to the Traditional Approach, 59 Tul.L.Rev. 389 (1984);
 Corr, Criminal Procedure and the Conflict of Laws, 73 Geo.L.J. 1217 (1985);
 Cray, Comment: Choice of Law in Right of Publicity, 31 UCLA L.Rev. 640 (1984);
 Currie, Comments on Reich v. Purcell, 15 UCLA L.Rev. 511 (1968);
 Hill, The Judicial Function in Choice of Law, 85 Colum.L.Rev. 1585 (1985);
 Juenger, Conflict of Laws: A Critique of Interest Analysis, 32 Am.J.Comp.L. 1 (1984);
 Korn, The Choice-of-Law Revolution: A Critique, 83 Colum.L.Rev. 772 (1983);
 Kozyris, Corporate Wars and Choice of Law, 1985 Duke L.J. 1 (1985);
 Leflar, Choice–Influencing Considerations in Conflicts Law, 41 N.Y.Univ.L.Rev. 267 (1966);
 Miller and Crump, Jurisdiction and Choice of Law in Multistate Class Actions after Phillips Petroleum Co. v. Shutts, 96 Yale L.J. 1 (1986);
 Morrison, Death of Conflicts, 29 Vill.L.Rev. 313 (1983–84);
 Morse, Choice of Law in Tort: A Comparative Survey, 32 Am.J.Comp.L. 51 (1984);
 Pielemeier, Constitutional Limitations on Choice of Law: The Special Case of Multistate Defamation, 133 U.Pa.L.Rev. 381 (1985);
 Reese, Choice of Law: Rules or Approach, 57 Cornell L.Rev. 315 (1972);
 Reese, The Law Governing Airplane Accidents, 39 Wash. & Lee L.Rev. 1303 (1982);
 Richman, Diagramming Conflicts: A Graphic Understanding of Interest Analysis, 43 Ohio St.L.J. 317 (1982);
 Sedler, Choice of Law in Michigan: Judicial Method and the Policy Centered Conflict of Laws, 29 Wayne L.Rev. 1194 (1983);
 Sprague, Choice of Law: A Fond Farewell to Comity and Public Policy, 74 Cal.L.Rev. 1447 (1986);
 16 Am.Jur.2d Conflict of Laws, §§ 103–105 (1979);
 15A C.J.S. Conflict of Laws § 8(4) (1967);
 Annotation, Modern Status of Rule that Substantive Rights of Parties to a Tort Action are Governed by the Law of the Place of the Wrong, 29 A.L.R.3d 603 (1970);
 Annotation, Conflict of Laws as to Right of Action for Loss of Consortium, 46 A.L.R.3d 880 (1972);
 Annotation, Choice of Law as to Applicable Statute of Limitations in Contract Actions, 78 A.L.R. 639 (1977);
 Annotation, Choice of Law Considerations in Application of Aviation Guest Statute, 62 A.L.R.3d 1076 (1975);
 Annotation, Choice of Law as to Liability of Liquor Seller for Injuries Caused by Intoxicated Persons, 2 A.L.R.4th 952 (1980);
 Annotation, Modern Status of Choice of Law in Application of Automobile Guest Statutes, 63 A.L.R.4th 167 (1988).

majority of jurisdictions which abolish the archaic and rigid rule of *lex loci* in favor of an approach which gives flexibility and addresses conflicts of laws issues in a responsible and equitable manner.

## WHY ABANDON LEX LOCI?

It is difficult to find a learned, thoughtful writing which defends *lex loci*. Perhaps the most common (if not only) defense of the rule is that it is simple and easy to apply. This, I suggest, lacks certain intellectual elegance.

It seems to be generally accepted that *lex loci* lacks analytical focus and has no objective standards. Sprague, Choice of Law: A Fond Farewell to Comity and Public Policy, 74 Cal.L.Rev. 1447 (1986). The underlying rationales for the rule, when put into practice, are simply not advanced, thus there is no reason to preserve it. *Olmstead v. Anderson*, 428 Mich. 1, 400 N.W.2d 292 (1987).

The more modern approaches to conflicts of law are considered "a necessary development to free the judicial system from the increasingly obvious inappropriateness of the old rules." Sprague, *supra,* at 1476. As Professor Weintraub in "Commentary on the Conflict of Laws," Second Edition, at § 6.19, said:

> But in shaping legal rules to apply to the complexities of the human condition, a quest for absolute certainty and complete simplicity is a child's dream. Rigid, simple rules produce irrational and dysfunctional solutions to variable, complex problems. Legal rules should be, perhaps inevitably must be, rules that produce socially desirable solutions to the problems to which those rules are addressed and that also are feasible for the members of a learned profession to administer. The place-of-wrong rule focuses on the one contact, injury, that, in unintentional tort cases, is most likely to be unrelated to the policy

of any tort rule. *The price paid for simplicity of that rule is, therefore, too high.* (Emphasis added.)

*See also* Scoles and Hay, Conflict of Laws, Hornbook Series (L.Ed.1984); Leflar, The Law of Conflict of Laws (1959); Hancock, Studies in Modern Choice-of-Law: Torts, Insurance, Land Titles (1984).

As stated by Chief Justice Wuest's special concurrence[3] in *Hofer v. Meyer,* 295 N.W.2d 333, 337–38 (S.D.1980): "These ancient decisions have no place in modern society." In *Hofer,* Chief Justice Wuest went on to state:

> The common law is not a rigid and arbitrary code, crystalized and immutable. Rather, it is flexible and adapts itself to changing conditions. It is an accumulation of expressions of the various judicial tribunals in their efforts to ascertain what is right and just between individuals with respect to private disputes. What may be considered a just disposition of a dispute at one stage of history may not be at another stage, considering changing social, economic and other conditions of society. *The principle of stare decisis was not meant to keep a stranglehold on developments which are responsive to new values, experiences and circumstances.* (Emphasis added.)

## WHY NOT ADOPT THE PUBLIC POLICY EXCEPTION ?[4]

Certainly this is preferred to blindly applying *lex loci*. We must remember, however, that it does not cure the weaknesses inherent in the rigid rule. Like the rule itself, it lacks analytical focus. It has been characterized as "an escape hatch to avoid absurd results." Sprague, *supra,* at 1451. It is said to have arisen "not because of analytical accuracy, nor because it provided for principled decision, but as an alterna-

---

**3.** At that time, he was a circuit judge sitting for a disqualified justice.

**4.** As of 1985, only three states recognized a public policy exception argument: *Mississippi in Boardman v. United Services Automobile Ass'n,* 470 So.2d 1024 (Miss.1985), *cert. denied,* 474

U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337; *New York in Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 480 N.E.2d 679, 491 N.Y.S.2d 90 (1985); and *California in Wong v. Tenneco, Inc.,* 39 Cal.3d 126, 702 P.2d 570, 216 Cal.Rptr. 412 (1985).

tive to the rigid and inappropriate requirements of vested rights." *Id.* It has been criticized as "too easy to use without hard legal thinking," *Id.* at 1452, "a substitute for the intellectual exertion necessary to find appropriate factors," *Id.*, and as "purely duplicative, and therefore obsolete, because the 'public policies' employed defensively in earlier times are already an integral part of the modern analysis." *Id.* at 1458.

Along with the foregoing, there are other problems. The majority holds that Indiana's guest statute (and presumably those in other states) violates our public policy. One does not have to do much thinking to identify many other statutory areas varying from ours which would arguably come within the same category. Such other areas of law include the dramshop cases,[5] interspousal immunity,[6] statutory damage limitations,[7] workers' compensation,[8] insurance [9] and criminal law.[10] What do we do then? What predictability do we have? Does this serve our citizens, bench and bar in a reasonable manner? I suggest that it does not!

> [T]hough the modern approaches have themselves been criticized, a return to the doctrine of comity and public policy would not resolve their weaknesses. Since the doctrines of comity and public policy can no longer serve a useful purpose, they should be abandoned by modern courts and relegated to background studies of the evolution of choice-of-law doctrine in the United States.

*Id.* at 1448.

### WHAT ARE THE ALTERNATIVES?

Once we properly resolve to finally depart from the *lex loci* rule and its public policy exception, we must decide on the appropriate approach to follow. Note that

I have said "approach" not a "rule." As stated by Professor Reese at 57 Cornell L.Rev. 315 (1972),

> By 'rule' is meant a phenomenon found in most areas of the law, namely a formula which once applied will lead the court to a conclusion. To be sure, there will inevitably be questions as to a rule's proper scope of application, including questions of how the words that comprise the rule should be defined or interpreted. Once it has been decided what a rule means and how it should be applied, however, a conclusion will be reached through the rule's application.
>
> By 'approach' is meant a system which does no more than state what factor or factors should be considered in arriving at a conclusion.

There seem to be three generally accepted approaches in dealing with choice of law conflicts: (1) "dominant contacts"; (2) "governmental interest"; and (3) "choice-influencing considerations." 16 Am.Jur.2d Conflict of Laws, §§ 103–105 (1979); 15A C.J.S. Conflict of Laws § 8(4) (1967); Restatement (Second) of Conflict of Laws 2d § 145 (1969); Annotation, Modern Status of Choice of Law in Application of Automobile Guest Statutes, 63 A.L.R.4th 167 (1988); Annotation, Choice of Law Considerations in Application of Aviation Guest Statutes, 62 A.L.R.3d 1076 (1975); Annotation, Modern Status of Rule that Substantive Rights of Parties to a Tort Action are Governed by the Law of the Place of the Wrong, 29 A.L.R.3d 603 (1970).

Much has been written on all of these approaches. Although I give citations to various writings on these alternatives, I will not make detailed comparisons. Suffice it to say that the dominant contacts approach was first adopted by New York in *Babcock v. Jackson,* 12 N.Y.2d 473, 191

---

**5.** *See Schmidt v. Driscoll Hotel,* 249 Minn. 376, 82 N.W.2d 365 (1957).

**6.** *See* Scoles and Hay, Conflict of Laws, Hornbook Series 551 (L.Ed.1984).

**7.** *Id.*

**8.** *See* Leflar, Choice–Influencing Considerations in Conflicts Law, 41 N.Y. Univ.L.Rev. 267, 272 (1966).

**9.** *Id.*

**10.** *See Commonwealth v. Ohle,* 503 Pa. 566, 470 A.2d 61 (1983).

N.E.2d 279, 240 N.Y.S.2d 743 (1963),[11] and has since been generally adopted as the "most significant relationships" approach in the Restatement, *supra.* The "governmental interest" approach was adopted by California in *Reich v. Purcell,* 67 Cal.2d 551, 432 P.2d 727, 63 Cal.Rptr. 31 (1967). The "choice-influencing considerations" approach was refined by Professor Leflar and ultimately adopted by the State of Wisconsin in *Heath v. Zellmer,* 35 Wis.2d 578, 151 N.W.2d 664 (1967).[12] Various other states, including Minnesota, Arkansas, Hawaii, New Hampshire and Massachusetts, have followed Wisconsin's lead.

WHAT IS THE CHOICE–INFLUENCING CONSIDERATION APPROACH?

When faced with a choice-of-law decision, the court considers and grounds its conclusion on the following considerations:

Predictability of results;

Maintenance of interstate and international order;

Simplification of the judicial task;

Advancement of the forum's governmental interests;

Application of the better rule of law.

All of the elements of choice-influencing considerations were well analyzed and set forth in *Heath, supra.* As Leflar later stated: "The choice-influencing considerations approach agrees that state interests should always be taken into account in choice of law, but holds that this is not the only relevant choice-influencing consideration." Currie, Comments on *Reich v. Purcell,* 15 UCLA L.Rev. 551, 638 (1968). Additionally, Professor Leflar in various writings has analyzed them further. "The plain fact is that the considerations have been present and operative all along, and have been motivating reasons behind every choice-of-law rule that was ever formulated and every case that was ever decided." Leflar, Choice–Influencing Considerations in Conflicts Law, 41 N.Y. Univ.L.Rev. 267, 324–25 (1966). Professor Leflar's proposal is not a rule but a method of analysis in which choice of law decisions are based upon these choice-influencing considerations because they are *relevant* to a reasonable choice of law. *Clark v. Clark,* 107 N.H. 351, 222 A.2d 205 (1968); *Conklin v. Horner,* 38 Wis.2d 468, 157 N.W.2d 579 (1968). By applying these considerations, courts can assess the pertinent interests and policy factors involved and achieve a desirable result in each situation. *Peters v. Peters,* 63 Haw. 653, 634 P.2d 586 (1981). In the attempt to obtain that result, we must recognize that one of the functions of the law of conflicts is to make sure that relations between the states and commerce between them is harmonious and *equitable to the parties concerned* while still preserving the integrity of the forum law. *Heath, supra.*

An application of *lex loci* which may result in an equitable decision is merely happenstance. Because of its mechanical nature equity is not a conscious factor. In its discussion of Leflar's "governmental interest" consideration, the court in *Wallis v. Mrs. Smith's Pie Co.,* 261 Ark. 622, 550 S.W.2d 453 (1977) (citing *Clark v. Clark,* 107 N.H. 351, 222 A.2d 205 (1968)), noted that the truest interest of the forum is in the fair and efficient administration of justice. The choice should not be one of preferred parties but of preferred law. *Heath, supra* (citing Leflar, Conflicts of Law: More on Choice–Influencing Considerations (Book II), 54 Calif.L.Rev. 1584 (1966)).

SUMMARY

The subject warrants greater in-depth analysis than I have expressed herein. Were I to be writing a majority opinion, I would go to greater lengths to explain and articulate our reasons in adopting the proper approach to conflicts of law. In the interest of conserving further judicial manpower, I will simply conclude by stating that we must abandon the archaic, obsolete, irrational, rigid rule of *lex loci* and

---

**11.** *Babcock* is also noted as the seminal case which led the way in the declination of the *lex loci delicti* doctrine.

**12.** Leflar, *supra,* note 5. Cheatham and Reese, Choice of the Applicable Law, 52 Colum.L.Rev. 959 (1952), was the first thorough effort to catalogue all the choice-influencing considerations.

adopt an appropriate, modern approach to conflicts of laws. I would adopt the holding of *Heath* and other similar cases and hold that in conflicts-of-law disputes we must analyze and apply the appropriate choice-influencing considerations in determining the appropriate law to apply.

I am authorized to state that Justices HENDERSON and SABERS join in this special concurrence.