CSS–WISCONSIN OFFICE, AN OPERATING DIVISION OF CONSUMER SATELLITE SYSTEMS, W63 N134 Washington Avenue, Cedarburg, Wisconsin, 53012, and Consumer Satellite Systems, 112 Shadowlawn Drive, Fishers, Indiana, 46038, a Foreign Corporation, Plaintiffs,

v.

HOUSTON SATELLITE SYSTEMS, INC., d/b/a Houston Tracker Systems, Denver, Colorado, a Foreign Corporation, Defendant.

No. 90–C–828.

United States District Court, E.D.Wis.

Dec. 6, 1991.

Foley & Lardner by Michael A. Bowen, Milwaukee, Wis., for plaintiffs.

Quarles & Brady by James Brennan, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

The above-captioned action was originally filed by CSS–Wisconsin Office and Consumer Satellite Systems (collectively "Consumer Satellite") in Milwaukee county circuit court against Houston Satellite Systems, Inc. ("Houston Satellite"). The action was subsequently removed to this court on August 20, 1990, on diversity grounds. See 28 U.S.C. §§ 1332 and 1441.

On July 31, 1991, the plaintiffs filed an amended complaint which set forth three claims: (1) violation of the Wisconsin Fair Dealership Law, Wis.Stats., Ch. 135.01 et seq.; (2) breach of contract; and (3) combination in restraint of trade in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

Presently, the court has before it Houston Satellite's motion for summary judgment which seeks dismissal of Consumer Satellite's Wisconsin Fair Dealership Law claim on the ground that Wisconsin law, including the Wisconsin Fair Dealership Law, does not apply to this action. For the reasons stated below, Houston Satellite's motion will be denied.

### I.

#### A.

A review of the record discloses that the following facts are not in dispute. Defendant Houston Satellite is a Texas corporation with its principal place of business in Englewood, Colorado. Houston Satellite designs and manufactures satellite receivers and related equipment that consumers can use at home in order to receive satellite signals. Houston Satellite sells its products through a network of authorized distributors including Consumer Satellite. Houston Satellite's Colorado headquarters is integral to its operation since its management personnel operate out of Colorado and all of its products are shipped to its authorized distributors from Colorado.

Plaintiff Consumer Satellite Systems is an Indiana corporation engaged in the distribution of equipment used for the reception of satellite television signals, with its principal place of business in Fishers, Indiana. Consumer Satellite Systems distributes approximately 88 lines of products, primarily within a fifteen state territory. Consumer Satellite Systems employs approximately 80 people: 50 employees reside and work in Indiana, and the remaining employees are disbursed evenly among Consumer Satellite Systems' branch offices which are located in Illinois, Kentucky, Michigan, Ohio, Pennsylvania, and Wisconsin. In addition, the officers, directors, and

the majority of shareholders of Consumer Satellite Systems reside in Indiana.

Plaintiff CSS–Wisconsin Office, located in Grafton, Wisconsin, is a branch office of Consumer Satellite Systems. This branch office was established in 1989 after Consumer Satellite Systems purchased the assets of Delta Satellite Corporation, a Wisconsin satellite distributor. Six employees of Consumer Satellite Systems are assigned to the CSS–Wisconsin Office.

The distributor relationship among the parties to this action arose from a series of distributor agreements. Notably, each of the distributor agreements contained an identical choice of law provision which provided in part:

> *Construction.* This agreement shall be *construed* in accordance with the internal laws of the State of Texas. . . .

(Houston Satellite's Brief in Support of Its Summary Judgment Motion, App. 1 at ¶ 10.4, and 2 at ¶ 10.4; Plaintiffs' Brief in Opposition to Defendant's Motion for Partial Summary Judgment, App. 3 at ¶ 10.4.) (emphasis added).

On February 13, 1987, Houston Satellite and Delta Satellite entered into an authorized distributor agreement under which Delta Satellite was appointed a non-exclusive distributor of Houston Satellite's products within a 250–mile radius of its Wisconsin warehouse (the "Delta Agreement").

Houston Satellite and plaintiff Consumer Satellite Systems entered into their original authorized distributor agreement on March 3, 1987 (the "CSS/HSS Agreement"). Pursuant to the terms of this agreement, Consumer Satellite Systems was appointed a non-exclusive distributor of Houston Satellite's products within a 250 mile radius of six warehouse locations in Illinois, Indiana, Ohio, Michigan, and Kentucky. As permitted under the agreement, Consumer Satellite Systems began distributing Houston Satellite products in Wisconsin in 1987 from its warehouse location in Illinois.

In May, 1988, Consumer Satellite Systems invested the sum of $600,000 in the acquisition of the assets of Delta Satellite; thereafter, Consumer Satellite Systems continued to distribute its product lines (including Houston Satellite products) in Wisconsin. Consumer Satellite System's purchase of Delta Satellite's assets did not result in an assignment of any of Delta's rights under the Delta Agreement. In fact, the Delta Agreement terminated automatically following the May 1988 asset purchase by its own terms. (Houston Satellite's Brief in Support of Its Summary Judgment Motion, App. 1 at ¶ 8.2(c)(iv); Plaintiffs' Brief in Opposition to Defendant's Motion for Partial Summary Judgment, App. 1 at ¶ 8.2(c)(iv).)

On July 1, 1989, Houston Satellite notified Consumer Satellite Systems, by letter, of its intent to terminate the CSS/HSS Agreement, effective October 1, 1989. Thereafter, Consumer Satellite Systems threatened to take legal action if the termination took effect. In response, Houston Satellite proposed a new distributor agreement which allowed Consumer Satellite to distribute Houston Satellite's products (the "Proposed 1989 Agreement"). This proposal also contained the same choice of Texas law provision which was contained in the other distributor agreements. While it is undisputed that Consumer Satellite signed the proposed agreement, a copy of the agreement which demonstrates that Houston Satellite signed the proposed agreement has not been produced. Indeed, Consumer Satellite does not even suggest that the proposal was in fact signed by Houston Satellite.

Subsequently, in November 1989, an "Amendment to Authorized Distributor Agreement" (the "October Amendment") was entered into between Houston Satellite and "Delta Satellite/CSS–Wisconsin" or "Consumer Satellite Systems, Inc. Wisconsin Branch." (Plaintiffs' Brief in Opposition to Defendant's Motion for Partial Summary Judgment, App. 4; Houston Satellite's Brief in Support of Its Summary Judgment Motion, App. 3.) This amendment became effective on October 1, 1989, and purported to amend the Delta Agreement in that it (1) identified Wisconsin as the only "full service facility" for Consumer Satellite Systems, and (2) allowed Consumer Satellite Systems to distribute Hous-

ton Satellite products throughout Wisconsin and its adjacent states—the "primary marketing area." (Amended Complaint, Ex. 3.; Houston Satellite's Brief in Support of Its Summary Judgment Motion, App. 3; Plaintiffs' Brief in Opposition to the Defendant's Motion for Partial Summary Judgment, App. 4 at 54.) Also, both Houston Satellite and Consumer Satellite agreed that Houston Satellite would ship all of its products only to the Wisconsin facility regardless of where these products were to be resold. (Plaintiffs' Brief in Opposition to Defendant's Motion for Partial Summary Judgment, App. 11 at 22.)

Houston Satellite negotiated and signed each of the Consumer Satellite distributor agreements from Colorado. Consumer Satellite signed the distributor agreements in Indiana and negotiated the distributor agreements primarily from Indiana; however, some negotiation, in the form of written correspondence, in connection with the October Amendment was sent from Houston Satellite to Consumer Satellite's counsel in Wisconsin.

Neither Houston Satellite nor Consumer Satellite provided the court with evidence concerning the percentage of Consumer Satellite's total sales which represented sales of Houston Satellite's products in *Wisconsin.* However, the president of Consumer Satellite Systems has testified in a deposition that Houston Satellite's products represented approximately thirteen to six percent of Consumer Satellite Systems' sales, in general, since 1987. (Schroeder Deposition, Houston Satellite's Brief in Support of Its Summary Judgment Motion, App. A at 12.)

### B.

In its motion for summary judgment, Houston Satellite argues that it is entitled to summary judgment on Consumer Satellite's Wisconsin Fair Dealership Law claim because Wisconsin law *in general* does not apply to the dispute. Specifically, Houston Satellite contends that Wisconsin law does not apply because (1) the choice of Texas law provision in its distributor agreement with Consumer Satellite must be enforced,

and (2) Wisconsin law would not apply in the absence of the choice of Texas law provision under a conflict of laws analysis.

In the alternative, Houston Satellite argues that even if Wisconsin law in general applies, it is entitled to summary judgment as to Consumer Satellite's claim under the Wisconsin Fair Dealership Law because Consumer Satellite Systems is not a grantee of a dealership "situated in" Wisconsin. *See* Wis.Stat. § 135.02(2).

In response, Consumer Satellite argues that Houston Satellite is not entitled to summary judgment as a matter of law as to its Wisconsin Fair Dealership Law claim because Wisconsin has a substantial nexus with the relationship between Consumer Satellite and Houston Satellite which defeats Houston Satellite's choice of law contention and also its "situated in Wisconsin" contention.

### II.

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. In order to succeed on a motion for summary judgment, the movant must show the following: (1) no genuine issue of material fact exists; and (2) its entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.,* 864 F.2d 1409, 1412 (7th Cir. 1989). Where the nonmovant is the party who bears the ultimate burden of proof at trial, that party is obligated to produce evidence sufficient to support a favorable determination by a reasonable trier of fact on its claim under the applicable law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 267, 106 S.Ct. 2505, 2519, 91 L.Ed.2d 202 (1986).

As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. "[M]aterial" facts are those facts which, under the governing

substantive law, "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Moreover, Rule 54(b), Federal Rules of Civil Procedure, permits (with emphasis added) the entry of partial summary judgment:

> When more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the *claims* ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

As previously noted, Consumer Satellite has alleged three claims in its amended complaint. Houston Satellite's present motion seeks dismissal only as to Consumer Satellite's Wisconsin Fair Dealership Law claim. Thus, its present motion is one for partial summary judgment under Rule 54(b).

### III.

### A.

■ Houston Satellite first contends that Wisconsin law in general does not apply to the present dispute because the choice of Texas law provision, which is contained in each of its distributor agreements with Consumer Satellite, is controlling. Although Consumer Satellite does not dispute the existence of the choice of Texas law provision, it claims that the terms of the choice of law provision render it inapplicable to this controversy.

A federal court whose jurisdiction is based on diversity must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Houston Satellite suggests that the choice of Texas law provision contained in the relevant distributor agreements with Consumer Satellite is evi-

dence that the parties intended Texas law to apply to the present dispute.

Under Wisconsin law, parties to a contract may expressly agree that the law of a particular jurisdiction shall govern their contractual relationship. *See Bush v. National School Studios, Inc.*, 139 Wis.2d 635, 642, 407 N.W.2d 883 (1987). The choice of law provision at bar expressly states that Texas law is to govern disputes concerning the *construction* of the contract. The only claim implicated by Houston Satellite's motion, on the other hand, concerns the *enforcement* of obligations allegedly arising by statute—the Wisconsin Fair Dealership Law—not obligations arising under the terms of the contract. It is arguable that Houston Satellite is not entitled to summary judgment as a matter of law on this ground because the choice of Texas law provision, by its own terms, is limited to controversies concerning construction of the contract; in other words, it may not govern the instant controversy which involves broader questions regarding the enforcement and the effect of the Wisconsin Fair Dealership Law. In my opinion, there is a factual issue as to the intention of the parties regarding the choice of law language, and this presents a genuine issue of material fact which precludes summary judgment on this ground.

■ In addition, even if one or both of the parties intended the choice of Texas law provision to govern issues of enforcement, as well as construction, the choice of Texas law provision would not be enforceable if "enforcement [would be] at the expense of important policies of a state whose law would be applicable if the parties [sic] choice of law provision were disregarded." *Bush*, 139 Wis.3d at 642, 407 N.W.2d 883. Thus, under Wisconsin law, even if it was intended that the choice of Texas law provision was to govern the issues of enforcement, this court is obliged to undertake a conflict of laws analysis in order to determine which state's law would be applicable in the absence of the choice of law provision. For these reasons, Houston Satellite is not entitled to summary judgment on this ground.

## B.

■ Houston Satellite also contends that it is entitled to summary judgment on Consumer Satellite's Wisconsin Fair Dealership Law claim because Wisconsin law does not govern the present dispute under the requisite conflict of laws analysis. In ascertaining which state law applies to disputes concerning rights under a contractual relationship, the Wisconsin Supreme Court has determined that the "grouping of contacts" approach is to be applied. *See Handal v. American Family Farmers Mutual Casualty Co.*, 79 Wis.2d 67, 73, 255 N.W.2d 903 (1977); *Urhammer v. Olson*, 39 Wis.2d 447, 450, 159 N.W.2d 688 (1968); *Utica Mutual Insurance Co. v. Klein & Son*, 157 Wis.2d 552, 556, 460 N.W.2d 763 (Ct.App. 1990). The state supreme court has pointed to the Restatement (Second) Conflict of Laws § 188, as the embodiment of the "grouping of contacts" approach. *See Haines v. Mid–Century Insurance Co.*, 47 Wis.2d 442, 446–47, 177 N.W.2d 328 (1970); *Utica Mutual Insurance Co.*, 157 Wis.2d at 556, 460 N.W.2d at 763. Restatement (Second) of Conflict of Laws § 188 provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6 [of this Restatement].

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

The directive of § 188 is "not to count contacts" but instead, to "consider which contacts are the most significant and to determine where those contacts are found." *See Haines*, 47 Wis.2d at 447, 177 N.W.2d 328.

As provided under § 188, the contacts are to be considered in light of the principles set forth in the Restatement (Second) of Conflict of Laws § 6, which states:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

It is undisputed that the October Amendment governed, at least in part, the contractual relationship between Consumer Satellite and Houston Satellite. Although Consumer Satellite contends that its contractual relationship with Houston Satellite stems from distributor agreements, in addition to the October Amendment, whether any additional agreements in fact comprised the contract between the parties is not a *material fact* since it would not affect the outcome of the Wisconsin Fair Dealership Law claim. That is, the only agreement that involves the state of Wisconsin to any significant degree (and therefore has the ability to affect the outcome of

this particular claim) is the October Amendment, and the parties do *not* dispute that this agreement was in force between them after its effective date (October 1, 1989).

For this reason, the court concludes that insofar as Houston Satellite claims that Wisconsin law does not apply to the present dispute under a conflict of laws analysis, Houston Satellite has successfully demonstrated the absence of a genuine issue of material fact. Because Consumer Satellite has failed to present specific facts which demonstrate that there remain genuine issues of material fact to be resolved at trial, the first element of Houston Satellite's burden under Rule 56(c), Federal Rules of Civil Procedure has been satisfied. However, in order for the present summary judgment motion to be resolved in Houston Satellite's favor, Houston Satellite must also establish that the undisputed facts demonstrate as a matter of law that Wisconsin does not have the most significant relationship with the October Amendment and the parties.

In the present action, the October Amendment was signed by Consumer Satellite Systems in Indiana while Houston Satellite signed the agreement in Colorado. However, this is not dispositive; although the place of contracting does suggest the lack of a significant relationship to Wisconsin, it does not strongly favor any other state.

In addition, while the record reveals that Consumer Satellite's counsel received written correspondence pertaining to the October Amendment in Wisconsin on at least one occasion, Consumer Satellite primarily conducted its negotiations regarding the October Amendment in Indiana. Houston Satellite has conducted all of its negotiations in Colorado.

Under the October Amendment, Consumer Satellite was to maintain a full-service facility only in the state of Wisconsin and "use its best efforts to market and sell [Houston Satellite's] Products only within their *Primary Marketing Area.*" (Plaintiffs' Brief in Opposition to Defendant's Motion for Partial Summary Judgment, App. at 4.) Since Wisconsin was the only

state boasting a full-service facility under the amendment, the relevant "primary marketing area" was defined as Wisconsin and its "adjacent" states. (Plaintiffs' Brief in Opposition to the Defendant's Motion for Partial Summary Judgment, App. 4 at 54.)

In addition, the parties agreed that Consumer Satellite would accept shipment of *all* of Houston Satellite's products in Wisconsin—the situs of Consumer Satellite's only full-service facility under the October Amendment—regardless of where the product would eventually be resold. However, all management decisions on behalf of Consumer Satellite, including decisions regarding product distribution, payment and inventory levels, are made in Indiana. Thus, because receipt of the goods occurred solely in Wisconsin and management decisions were made in Indiana, it can reasonably be said that the place of performance of the contract, on behalf of Consumer Satellite, is in two locations—Wisconsin and Indiana. On the other hand, Houston Satellite ships all of its products and sends all of its price lists and promotional information from Colorado. Hence, the performance of the contract appears to be spread over several states.

Insofar as the October distributor agreement was one for the sale of Houston Satellite's products and the provision of services, the location of the subject matter of the contract is difficult to isolate. Consumer Satellite managed its product distribution in Indiana; however, Wisconsin was specifically identified under the October amendment as the location of Consumer Satellite's only full-service facility. Further, the parties agreed that Houston Satellite would ship all of its products only to the Wisconsin facility regardless of where the product was to be resold. Accordingly, this court believes that the subject matter of the October Amendment can reasonably be said to be located in Indiana and Wisconsin.

The above analysis of the contacts to be considered under the Restatement (Second) Conflict of Laws § 188, fails to demonstrate that, as a matter of law, Wisconsin does not have the most significant contacts

with the October Amendment. Nonetheless, the court is obligated to analyze these contacts in light of the general principles set forth in the Restatement (Second) Conflict of Laws § 6.

Here, the relevant policies of the forum—Wisconsin—would clearly be furthered by application of Wisconsin law. The Wisconsin Fair Dealership Law reflects a strong public policy in favor of protecting a Wisconsin "dealer against unfair treatment by grantors...." *Bush,* 139 Wis.2d at 644, 407 N.W.2d 883. The court is satisfied that where, as here, an alleged dealership's contacts with Wisconsin are substantial, Wisconsin has a sufficiently strong interest in protecting the alleged dealership. *See* Restatement (Second) Conflict of Laws § 6(2)(b).

As previously determined, the choice of Texas law provision is a narrow one and does not apply to disputes regarding enforcement of the Wisconsin Fair Dealership Law. Hence, the court finds that the application of Wisconsin law to the present dispute (which concerns the enforcement of the contractual relationship between Consumer Satellite and Houston Satellite) will not conflict with the party's justified expectations. *See* Restatement (Second) Conflict of Laws § 6(2)(d).

■ Houston Satellite argues that the application of the Wisconsin Fair Dealership Law to the present controversy may present difficulties under the commerce clause of the United States Constitution. However, because the distributor relationship between Consumer Satellite and Houston Satellite involves commerce that actually takes place in Wisconsin, the court is not persuaded that applying the Wisconsin Fair Dealership Law to the distributor relationship would offend the commerce clause. *See Healy v. Beer Institute, Inc.,* 491 U.S. 324, 332, 109 S.Ct. 2491, 2497, 105 L.Ed.2d 275 (1989) (state statute which regulates commerce occurring *wholly* outside the state's borders is invalid under the commerce clause); *see also,* Restatement (Second) Conflict of Laws § 6(a).

For these reasons, I am persuaded that the contacts identified under the Restatement (Second) Conflict of Laws § 188 and the general principles set forth in the Restatement (Second) Conflict of Laws § 6 do not support Houston Satellite's motion for partial summary judgment; that is, Houston Satellite has failed to demonstrate that as a matter of law Wisconsin is not the state with the most significant contacts. Accordingly, Houston Satellite has not satisfied its second burden and is not entitled to partial summary judgment on this ground.

### C.

■ In the alternative, Houston Satellite claims it is entitled to summary judgment on Consumer Satellite's Wisconsin Fair Dealership Law claim even if Wisconsin law applies. The defendant argues that Consumer Satellite does not qualify as a "dealer" under the Wisconsin Fair Dealership Law because Consumer Satellite Systems is not a grantee of a dealership "situated in" Wisconsin. *See* Wis.Stat. § 135.02(2).

Houston Satellite suggests that there are no genuine issues of material fact as to this claim; Consumer Satellite has not offered any evidence to the contrary. (Notably, the issue as to which agreement governed the relationship between Consumer Satellite and Houston Satellite is not material to this issue as it is undisputed that Consumer Satellite distributed products in Wisconsin under each of the agreements.) Nevertheless, even if Houston Satellite has satisfied its first burden, it is entitled to summary judgment only if it can also demonstrate that the undisputed facts entitle it to judgment on this claim as a matter of law.

■ Pursuant to the Wisconsin Fair Dealership Law only a "dealer" is entitled to the protection of the statute. A "dealer" is defined as (with emphasis added): a person who is a grantee of a dealership *"situated in* the state." Wis.Stat. § 135.02(2). The Wisconsin Court of Appeals has determined that the "situated in Wisconsin" requirement indicates that the legislature intended the Wisconsin Fair Dealership Law to apply exclusively to dealerships that "do business within the geographic confines of the state of Wiscon-

sin." *Swan Sales Corp. v. Joseph Schlitz Brewing Co.*, 126 Wis.2d 16, 22, 374 N.W.2d 640 (Ct.App.1985) (dealership which performed *all* of its promotional and merchandising services for Schlitz *overseas* was not a dealer under the Wisconsin Fair Dealership Law as the subject matter of the agreement between the parties was not situated in Wisconsin). *Hill v. International Harvester Co.*, 798 F.2d 256, 260 n. 12 (7th Cir.1986) (district court in diversity case may follow decisions of state's intermediate appellate court if satisfied that the state's highest court would decide the matter in the same fashion). Hence, the "situated in Wisconsin" requirement is satisfied so long as the dealership conducts business in Wisconsin. Moreover, the Wisconsin court of appeals did not identify a minimum degree of business activity that constitutes "doing business." I believe that the highest court of Wisconsin would adopt the state appellate court's construction.

Houston Satellite argues that because Consumer Satellite is incorporated and has its principal place of business in Indiana, it is not "situated in" Wisconsin. However, the court finds this to be too narrow of an interpretation of the "situated in Wisconsin" requirement. Although the parties did not provide the court with specific sales figures, it is undisputed that Consumer Satellite sold its line of products, including Houston Satellite products, in Wisconsin from 1987 to the present. (Houston Satellite's Brief in Support of Its Summary Judgment Motion, App. A at 85–86.) In light of *Swan*, this is enough to constitute "doing business" in Wisconsin for purposes of the Wisconsin Fair Dealership Law.

Accordingly, the court concludes that Houston Satellite has failed to demonstrate that it is entitled to judgment as a matter of law on its claim that Consumer Satellite is not the grantee of a dealership "situated in Wisconsin."

Therefore, IT IS ORDERED that Houston Satellite's motion for partial summary judgment be and hereby is denied.