**DIESEL SERVICE COMPANY,**
Plaintiff–Appellant,

v.

**AMBAC INTERNATIONAL CORPORATION, Defendant–Appellee.**

No. 91–1204.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1991.

Decided April 8, 1992.

Michael Bowen (argued), William M. Conley, Foley & Lardner, Madison, Wis., for plaintiff-appellant.

Edward M. Dolson (argued), John M. Duggan, Armstrong & Teasdale, Kansas City, Mo., for defendant-appellee.

Before BAUER, Chief Judge, CUDAHY, Circuit Judge, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

"We review the district court's decision to grant summary judgment *de novo* and utilize the same standard of decision making as that employed by the district court." *McMillian v. Svetanoff,* 878 F.2d 186 (7th Cir.1989). Summary judgment is granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this case there are no disputes about relevant facts, only issues of law are disputed. The facts, in the light most favorable to the nonmoving party, are as follows.

## FACTS

Plaintiff, Diesel Service, is a Minnesota corporation, which has its main office in St. Paul and distributes auto parts in several states, including Wisconsin. Diesel was a dealer for defendant, AMBAC International, a Delaware corporation with its principal place of business in South Carolina, for many years.[1] Most recently, approximately 34% of Diesel's sales of AMBAC parts were made in Wisconsin—more than in any other state it sells in. The next highest state was Minnesota, with 20%. The parts are distributed to service distributors in Diesel's territory; with one exception in Wisconsin these service distributors are independent contractors, not owned or

---

[*] The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

1. Diesel is also a dealer for other product lines. Diesel described AMBAC as one of its top two lines. It was second highest in 1989, when AMBAC accounted for 18.4% of its sales. However, Diesel states, and AMBAC does not dispute, that AMBAC parts accounted for virtually all of Diesel's sales in Wisconsin, although it was not dominant in other states. R.39, supplemental affidavit of William V. Lahr and R.44, Defendant's Rebuttal to Plaintiff's Supplemental Proposed Findings of Fact and Conclusions of Law, proposed fact #22.

managed by Diesel. Diesel has appointed 13 service distributors in Minnesota, 11 in North Dakota, 9 in Wisconsin, 4 in South Dakota, 2 in Iowa, and 1 in Michigan. All financial statements, product orders, price lists, billings, and product shipments go through Diesel's St. Paul office, not the individual service centers in Wisconsin or other states. Diesel manages its relationship with the distributors from the Minnesota headquarters. The contract includes a clause specifying that it be interpreted under South Carolina law.

AMBAC terminated the distributorship with 90 days notice, as provided in their contract. Diesel filed suit against AMBAC in the federal district court for the western district of Wisconsin. Jurisdiction is based on diversity. The cause of action is an alleged violation of the Wisconsin Fair Dealership Law (WFDL), which, where applicable, limits the ability of a grantor to terminate a dealership. Diesel sought a preliminary injunction under the WFDL, which the district court denied, suggesting that Wisconsin law might not apply to these parties. AMBAC then filed a motion for summary judgment, arguing that Wisconsin law does not apply, so Diesel cannot sue under the WFDL. Summary judgment was granted for AMBAC and this appeal followed.

## DISCUSSION

■ A federal court sitting in diversity jurisdiction follows the choice of law rules of the forum state, in this case Wisconsin. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Wisconsin choice of law rules generally respect party choice, but not where it would interfere with an important interest of a state whose law would otherwise apply. *Bush v. National School Studios, Inc.*, 139 Wis.2d 635, 642, 407 N.W.2d 883, 886 (1987). Therefore, the first question is whether, putting aside the

contract provision, Wisconsin law would apply.[2]

I. *Whether This Is A Choice of Law Question*

■ The plaintiff argues that Wisconsin choice of law rules do not apply to this case, but that the only limits on the application of the WFDL are those mentioned in the statute itself—including the requirement that the dealership be "situated in" Wisconsin. While counsel's arguments on this point are creative, we are unpersuaded for several reasons.

First and foremost, there is nothing in the text of the statute or its legislative history to indicate that this somewhat unusual interpretation was intended. Plaintiff points to 135.025(3) of the act, which states that "The effect of this chapter may not be varied by contract or agreement." This has been interpreted to void choice of law clauses choosing a forum other than Wisconsin, but only if Wisconsin law would otherwise apply. *Bush,* 407 N.W.2d at 886. While this passage clearly reflects the legislative intent that parties to whom the WFDL applies may not avoid the terms of the WFDL by contract, it does not suggest an intent to have the WFDL apply to all parties, regardless of choice of law rules.

Plaintiff's reliance on *Bush* is similarly misplaced. The Wisconsin Supreme Court made quite clear in *Bush* that the WFDL requires ignoring party choice of law as expressed in a contract *only* if Wisconsin's law "would be applicable if the parties choice of law provision were disregarded." *Bush,* 407 N.W.2d at 886. Thus, the question is which state's law would apply when the contractual choice of law provision is disregarded. That question is to be decided by traditional choice of law principles. There is nothing in *Bush* to indicate that the terms of the WFDL alone are relevant. In fact, the court in *Bush* noted that, after losing on the contract choice of law provision, the defendant did not argue that any

---

**2.** Even if Wisconsin law did not generally allow escape from a contractual choice of law, we should consider the choice of law issue anyway since this is not a suit brought under the contract, but under the WFDL. See *CSS–Wisconsin Office v. Houston Satellite, Inc.,* 779 F.Supp. 979, 983 (E.D.Wis.1991).

other state's law would apply instead of Wisconsin's (the plaintiff was domiciled in Wisconsin and the dealership existed only in Wisconsin). The defendant's only other arguments were whether the specific conditions of the WFDL were met, and the court said, "We view this as an acknowledgement by National that Wisconsin law applies if the choice of law clause is disregarded." *Bush*, 407 N.W.2d at 888. If the test of whether Wisconsin law applied were only the specific requirements of the WFDL, then the court's statement in *Bush* would make no sense, since the defendant certainly was contesting whether the requirements of the WFDL were met. The court clearly viewed the choice of law question as separate and prior to the question of the specific WFDL requirements.

Plaintiff relies on *Guertin v. Harbour Assurance Co.*, 141 Wis.2d 622, 630, 415 N.W.2d 831, 834 (1987), interpreting Wisconsin's borrowing statute, for the argument that:

> [T]he statute would add little or nothing to the common law of Wisconsin if by the use of the term 'foreign cause of action' the legislators meant to require the courts to go through their usual conflict of laws analysis in deciding whether the foreign period of limitations is a bar.

However, this weighs *against* the plaintiff's interpretation of the WFDL. The plaintiff argues that the phrase "situated in this state" would add little or nothing to the law if courts are first required to go through choice of law analysis. This assertion is contradicted by the very clear legislative history of the "situated in" clause, as well as by arguments made by plaintiff's counsel at oral argument. At oral argument, when the proper interpretation of "situated in" was discussed, the plaintiff's counsel argued that the factors to be considered in evaluating "situated in" were different than the factors used in evaluating the choice of law question. This is discussed below, in part III, but we agree that the meanings are different.

At any rate, it is quite clear that "situated in" serves a specific purpose other than taking over the choice of law question.

This provision was added to the WFDL in 1977 specifically to reverse the effect of decisions in *C.A. May Marine Supply Co. v. Brunswick Corp.*, 557 F.2d 1163 (5th Cir.1977) and *Boatland, Inc. v. Brunswick Corp.*, 558 F.2d 818 (6th Cir.1977), which held that a dealer in another state, who had a contract with a Wisconsin supplier specifying the application of Wisconsin law, could claim the protection of the WFDL. This legislative history is described in *Swan Sales Corp. v. Jos. Schlitz Brewing Co.*, 126 Wis.2d 16, 374 N.W.2d 640 (App. 1985) as well as in Michael A. Bowen and Brian E. Butler, The Wisconsin Fair Dealership Law §§ 1.7, 1.8, 4.18 (1991). The "situated in" requirement did add something to the choice of law analysis—there are situations in which Wisconsin law is designated by contract or in which Wisconsin has the most significant contacts, but the legislature still did not want the WFDL to apply. The plaintiff's interpretation of this clause makes particularly little sense when one notes that the clause was not added until 1977, three years after the law took effect. How were courts supposed to decide when the WFDL applied during that three year period if not through choice of law principles?

The case law also fails to support the plaintiff's argument. The cases cited by plaintiff in which a court started its examination with the "situated in" language, and not with choice of law analysis are cases in which there was no dispute about the choice of law, and therefore no discussion was necessary. *Swan*, supra, involved only Wisconsin corporations, and a contract negotiated and executed in Wisconsin. No one disputed that Wisconsin law applied. In *L-O Distributors, Inc. v. Speed Queen Co.*, 611 F.Supp. 1569 (D.Minn.1985) a Minnesota corporation, with its primary place of business in Minnesota, sued a Delaware corporation, which had its primary place of business in Wisconsin, under the WFDL. The contract included a Wisconsin choice of law provision, so there was no discussion of whether Wisconsin law would apply. In *Hoff Supply Co. v. Allen-Bradley Co.*, 750 F.Supp. 176 (M.D.Pa.1990) the court said it would assume that Wisconsin

law applied for the purpose of disposing of the WFDL claim. Thus, in none of these cases did a court conclude that the "situated in" language of the WFDL superseded any choice of law analysis.

In other cases, however, the courts have explicitly held that they needed to examine the choice of law issue before they would consider the WFDL. In *Process Accessories Co. v. Balston, Inc.*, 636 F.Supp. 448 (E.D.Wis.1986), the court began with a choice of law analysis, and only considered whether the requirements of the WFDL were met in order to consider whether Wisconsin had a strong interest in applying its law to that case. Most recently, in *CSS*, supra, the court considered whether Wisconsin had the most significant contacts with the case before allowing application of the WFDL. In addition, there are two cases in which the court determined that the choice of law provision specifying Wisconsin law would be honored before proceeding to a discussion of the WFDL. *Boatland*, supra, and *Bimel–Walroth Co. v. Raytheon Co.*, 796 F.2d 840 (6th Cir. 1986).

The remaining case relevant to this point is *Maningas v. Gas Magazines, Inc.*, No. 80 CV 724 (Dane County Circuit Court April 18, 1980). Unfortunately, its reasoning is unclear. The court said that "the first question to be decided is whether the plaintiff is a 'dealer' as that term is defined in sec. 135.02(5)." *Maningas*, at 1. The question of whether the plaintiff qualified as a dealer turned on whether he was the grantee of a dealership "situated in" Wisconsin. Beginning with this question supports the plaintiff's view. However, the court then said that to determine whether the WFDL would apply, it must consider which state had the most significant contacts, and proceeded with a § 188 inquiry. *Maningas*, at 2. Whether the court belatedly realized that there was a choice of law question, after having said that the first question was whether plaintiff was a dealer or whether the court believed that the "situated in" language should be interpreted by the same factors as a choice of law question is unclear.

█ There is no reason to believe that "situated in" was intended to direct the courts to a § 188 analysis; that is not how *Swan* interpreted "situated in;" and the circuit court did not make explicit that that is what it was doing. Thus there is no reason for us to follow such a reading of *Maningas*. While we will always follow a state supreme court's interpretation of its law, an unclear opinion from a single state trial court is not binding, particularly when there are other cases which point in a different direction.[3] Thus, plaintiff's arguments for avoiding the choice of law analysis fail, and we proceed to examine Wisconsin's choice of law rules.

## II.  *Wisconsin's Choice of Law Rules*

In contract cases[4] Wisconsin follows the most significant contacts approach. In

---

3.  See *Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern National Insurance Group*, 750 F.2d 619, 624 (7th Cir.1984) ("Ordinarily we would give great weight to the Illinois Appellate Court's interpretation of an Illinois statute, as evidence of Illinois law, which is binding on us in this diversity suit. But bearing in mind that the Illinois Supreme Court is the final authority on the meaning of Illinois statutes, and that an intermediate appellate court decision is not binding evidence of state law in circumstances when it is not a good predictor of what the state's highest court would do in a similar case, we have decided that we ought not consider ourselves bound by the decisions that the employer has cited to us.") We do not believe that the Supreme Court of Wisconsin would follow the decision in *Maningas*, or at least not the plaintiff's reading of the decision in *Maningas*.

4.  There is no real dispute about what the Wisconsin choice of law rules are for contract cases, there is only dispute about whether this is a contract case. The rules adopted for contract cases are the appropriate rules to follow since there is a contractual relationship between the parties—there has to be as a prerequisite for WFDL, 135.02(3) defines dealership as a "contract or agreement." This was also the choice of law rule followed in *Maningas, Process America*, and *CSS*. While this is not a breach of contract case, neither is it a tort case; anyway, the factors are similar. Plaintiff repeatedly cites to *Heath v. Zellmer*, 35 Wis.2d 578, 151 N.W.2d 664 (1967) and *Hunker v. Royal Indemnity Co.*, 57 Wis.2d 588, 204 N.W.2d 897 (1973) as being the exclusive test for choice of law in Wisconsin, but they pre-date *Haines v. Mid–Century Insurance Co.*, 47 Wis.2d 442, 177 N.W.2d 328 (1970) and *Handal v. American Farmers Mutual Casu-*

*Haines v. Mid–Century Insurance Co.*, 47 Wis.2d 442, 177 N.W.2d 328 (1970), the Wisconsin Supreme Court adopted the test set forth in § 188 of the Second Restatement of Conflicts:

> 188. Law Governing in Absence of Effective Choice by the Parties.
>
> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which as to that issue has the most significant relationship to the transactions and the parties under the principles stated in sec. 6.
>
> (2) In the absence of an effective choice of law by the parties (see sec. 187), the contacts to be taken into account in applying the principles of sec. 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting,
>
> (b) the place of negotiations of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

The principles of sec. 6, referred to in § 188(1) were relied upon in *Process Accessories*,[5] which makes sense since § 188 calls for their use. However, in practice Wisconsin courts do not seem to have relied upon these factors. A search reveals only two cases which do so, and one of them is unpublished. *Utica Mutual Insurance Co. v. Klein & Son, Inc.*, 157 Wis.2d 552, 460 N.W.2d 763 (App.1990) and *Ziemba v. Anagnos*, 119 Wis.2d 897, 350 N.W.2d 740 (1984) (LEXIS, States library, Wisc file). What the *Haines* court, which was the first to discuss the § 188 analysis, did when the significant contacts from § 188 were split between two states was use the choice of law influencing factors from *Heath v. Zellmer*, 35 Wis.2d 578, 151 N.W.2d 664 (1967), even though those factors are generally used only in tort cases. *Haines*, 177 N.W.2d at 333. We will therefore use the *Heath* factors for the second step in our analysis. In addition to their use in *Haines*, the district court used them in this case, noting that they are quite similar to the section 6 factors. The *Heath* factors are:

> Predictability of results,
>
> Maintenance of interstate and international order,
>
> Simplification of the judicial task,
>
> Advancement of the forum's governmental interests,
>
> Application of the better rule of law.

*Heath*, 151 N.W.2d at 672.

■ There are then five § 188 contacts to be evaluated in light of the five *Heath* principles. "The directive of § 188 is 'not to count contacts' but instead, to 'consider which contacts are the most significant and to determine where those contacts are found.' See *Haines*, 47 Wis.2d at 447 [177 N.W.2d 328]." *CSS* at 985–86. Thus, in this case, the substantive contacts—place of performance and location of subject matter—are more significant than contacts relevant to the formalities of contracting such as the place of negotiation or place of contracting. The domicile or place of business

---

*alty Co.*, 79 Wis.2d 67, 255 N.W.2d 903 (1977), which clearly adopt Restatement § 188 for contract cases.

**5.** Restatement (2d) of Conflicts, § 6 provides:
(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is not such directive, the factors relevant to the choice of the applicable rule of law include
(a) the needs of the national and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
*See Process Accessories*, 636 F.Supp. at 449–450.

are also important contacts in evaluating Wisconsin's potential interest in this case.

### A. *Significant Contacts*

█ The district court correctly evaluated the various contacts to be considered under § 188, and we review them briefly here.

(a) The place of contracting: The contract was signed in Minnesota and South Carolina, respectively. Nothing occurred in Wisconsin.

(b) The place of negotiation of the contract: The contract was negotiated via mail and phone in Minnesota and South Carolina, nothing was done in Wisconsin. Whether earlier contracts between plaintiff and the predecessor of defendant may have been executed in Wisconsin is a disputed and irrelevant fact. We are applying choice of law principles to the current agreement between these two parties, not past agreements.

(c) The place of performance: The distributorship territory included Minnesota, North Dakota, South Dakota, Wisconsin, part of Michigan and part of Iowa. The agreement to promote sales and facilitate service involved some activities in all of those states, but all orders, payments, and product shipments went through the Minnesota headquarters, and all financial records were kept there. All correspondence about the dealership, including price lists and promotional materials, was sent by AMBAC to Diesel in Minnesota. Approximately 34% of plaintiff's AMBAC sales were in Wisconsin, more than in any other single state. More service agents were appointed in Minnesota than in any other single state. Plaintiff owned or operated service distributor outlets in Brookfield, Wisconsin, and Eagan and Roseville, Minnesota.[6]

Diesel managed its relationship with its distributors from its Minnesota headquarters. The bulk of Diesel Service's activities under the dealership agreement took place in Minnesota. The proportion of sales made in Wisconsin was not even necessarily constant, we have figures for only one year, while the activities of Diesel Service were constant in Minnesota. AMBAC's performance under this agreement took place in South Carolina. All these factors, except the percentage of AMBAC sales, favor application of Minnesota law, not Wisconsin. Diesel places far too much reliance on this one factor—percentage of sales. The other activities that took place under this agreement outweigh this single fact, and show performance was mainly in Minnesota.[7] When Diesel argues, as it does, that the performance of the contract really was split, that only makes this factor less significant in the choice of law analysis. *Gold v. Wolpert,* 876 F.2d 1327, 1330 (7th Cir.1989).

(d) The location of the subject matter of the contract: The subject matter of the contract is services, which are difficult to locate in one place. The distribution of services would be the same as the place of performance—more heavily concentrated in Minnesota than Wisconsin. Additionally, we note, the activities that took place in Wisconsin were in large part the activities of the independent service distributors, rather than of Diesel Service. This weighs even more heavily in favor of Minnesota over Wisconsin.

(e) The domicile, residence, nationality, place of incorporation and place of business of the parties: Plaintiff is incorporated and has its principal place of business in Minnesota. All officers and directors are there. Defendant is incorporated in Delaware and has its principal place of business in South Carolina. This factor also weighs against choice of Wisconsin law.

### B. *Choice Influencing Factors from Heath*

These factors, which so far weigh in favor of choosing Minnesota, not Wisconsin

---

**6.** Diesel also owns a service outlet in Albert Lea, Minnesota, but that outlet was not opened until after AMBAC's termination of their agreement.

**7.** We note that in *Process Accessories* the court found that Wisconsin law should apply because

of the significance of other factors in the performance of the contract, even though a higher percentage of sales were made in Illinois. Thus, distribution of sales is not generally considered as controlling as the plaintiff suggests.

law must be evaluated in light of the *Heath* principles.

(a) Predictability of results: Applying Wisconsin law in this case would create uncertainty and unpredictability. While Wisconsin may have had a greater proportion of AMBAC sales in 1989, this could change from year to year—determining if Wisconsin law applied on that basis would be a nightmare. In addition, the parties contract specifies the application of South Carolina law. While the plaintiff is correct to point out that predictability is not solely governed by contractual choice since laws, such as the WFDL, often direct courts to ignore party choice in certain situations, there is still no support for the suggestion that the parties expected Wisconsin law to apply. It would have been unlikely for that to be the expectation of parties in Minnesota and South Carolina, and the fact that the choice of law principles discussed in this opinion point to the application of Minnesota law if the contract choice is not to be followed also indicates that it would have been unreasonable for the parties to expect Wisconsin law to apply. This factor, which weighs against applying Wisconsin law, is generally entitled to great weight in consensual arrangements such as contracts. *Heath,* 151 N.W.2d at 672 and Restatement (2d) on Conflicts, § 188(1) comment b.

(b) Maintenance of interstate and international order: The district court considered the possible commerce clause problem in allowing Wisconsin's law to govern economic activity that took place largely outside of Wisconsin, a question that we considered briefly, but reserved for another day in *Wright–Moore Corp. v. Ricoh Corp.,* 908 F.2d 128, 134 n. 2 (7th Cir.1990). We still need not rule on this question, given the other factors weighing against choosing Wisconsin law in this case. At any rate, the facts of this case are different from the situation considered in *Healy v. Beer Institute, Inc.,* 491 U.S. 324, 109 S.Ct. 2491, 2497, 105 L.Ed.2d 275 (1989) where the Court said that a state statute could not be applied to "commerce that takes place wholly outside of the states's borders." In this case, at least one-third of the commerce took place within Wisconsin's borders. While this fact does not encourage the choice of Wisconsin law, neither does it forbid it. One other concern covered by this factor, the possibility of retaliation by other states, does not seem likely in this case. Finally, as Diesel recognizes, this factor calls upon states which are minimally concerned with a case to defer to states that are more concerned. As we can see from the analysis of contacts above, Wisconsin has substantially less connection with this case than Minnesota. Thus, this factor weighs against application of Wisconsin law.

(c) Simplification of the judicial task: While federal courts in the Seventh Circuit are hardly unfamiliar with the WFDL (federal courts have decided more cases under this law than Wisconsin courts), it is not entirely easy for a federal court to apply this Wisconsin law. Only the Wisconsin Supreme Court can give a definitive interpretation of the WFDL, and it has decided only a few cases. On at least one occasion the Wisconsin Supreme Court has chosen a different interpretation than had been used by the federal courts. Thus, in light of *Foerster, Inc. v. Atlas Metal Parts Co.,* 105 Wis.2d 17, 313 N.W.2d 60 (1981), the Seventh Circuit, in *Wilburn v. Jack Cartwright, Inc.,* 719 F.2d 262 (7th Cir.1983), reversed the district court. In addition, as the district court noted, the choice of Minnesota law over Wisconsin's simplifies the task in this case because it would result in this case being dismissed. While we do not encourage judges to make a choice of law decision because it eases their workload at the expense of a party with a legitimate claim, it is apparent from all of the other factors discussed that that is not the case here.

(d) Advancement of the forum's governmental interests: Wisconsin's possible interest in applying the WFDL is discussed at length below.

(e) Application of the better rule of law: This factor calls for courts to choose the law which, in the court's view, better reflects the socioeconomic facts of life. *Heath,* 151 N.W.2d at 673. There is no

consensus on franchise and dealership law. Minnesota has a franchise law, but it apparently offers less protection than Wisconsin's, at least to this dealer, or the case would have been brought there. South Carolina apparently has no applicable franchise or dealership law. Wisconsin's law was described as "rather novel" by the court in *Process Accessories*, 636 F.Supp. at 450. Even accepting the plaintiff's version of the "socioeconomic facts of life," we do not find its argument for Wisconsin law compelling.

■ Franchise laws such as the WFDL are based not only on the notion of unequal bargaining power, as the plaintiff emphasizes, but also on the dependence that a dealer would have on the grantor when a substantial portion of its business was dependent on the one grantor. In *Foerster*, 313 N.W.2d at 65, the Wisconsin Supreme Court noted that the economic situation which concerned the drafters of the WFDL was one in which "the entire business is built around and relies on the sale, servicing or representation of one grantor's products ... 50% to 60% of the business' time is dedicated to the sale of one company's line of products." AMBAC was one of several product lines Diesel carried, and represented less than 20% of Diesel sales—one-half to one-third of the amount referred to in *Foerster*. Even though AMBAC was Diesel's primary product in Wisconsin, the economic analysis required under this factor calls for looking at the effect on the dealership as a whole, not just in Wisconsin. These facts are significant not because they suggest that the WFDL would not apply to Diesel, but because they suggest that even under the economic principles of the WFDL, we cannot say that Wisconsin law better reflects the socioeconomic facts of life, or is the better rule of law. Therefore, this factor does not support application of Wisconsin law.

In light of these factors and principles, we conclude, as did the district court, that Minnesota has the most significant contacts considering everything except Wisconsin's potential interest. Plaintiff argues that Wisconsin's interest in applying the WFDL outweighs all of the other considerations combined. While the WFDL does say that it represents a compelling policy, that is relevant only if it actually applies to these parties by its own terms. Even if the WFDL would apply, and be a compelling Wisconsin policy, Wisconsin may not be entitled to enforce its policy given the significant contacts of Minnesota and other states. At any rate, we must first consider whether Wisconsin even has an interest to be weighed.

III. *Wisconsin's Potential Interest*

■ The Wisconsin legislature made it clear that the WFDL is an important policy that is intended to override party contract choices and "govern all dealerships ... to the full extent consistent with the constitutions of this state and the United States." 135.025(2)(d). It "may not be varied by contract or agreement." 135.025(3). The statute also referred to its purpose as a "compelling interest" (135.025(2)(a)), and said that it should be liberally construed (135.025(1)). The defendant argues that the possible interest from the application of the WFDL should not be considered in deciding whether Wisconsin law applies, because the WFDL is not applicable until Wisconsin law applies. However, it *is* relevant to the question of Wisconsin's interest in applying its law to this dispute. To complete the evaluation of significant contacts, we must examine whether Wisconsin's legislature has expressed an interest, via the WFDL, in applying its own law to this case. To do this we must decide whether, if Wisconsin law were applied, the WFDL would cover the plaintiff's relationship with the defendant in this case. That was the tack taken in *Process Accessories*, and more importantly, in *Bush*, where the Wisconsin Supreme Court, in deciding whether to follow a party choice of law or whether Wisconsin's interest should overrule it, considered whether the WFDL would properly apply to the parties' relationship.

In order for the WFDL to apply to a dealership agreement, the dealership must be "situated in" Wisconsin. 135.02(2). The leading case from Wisconsin courts inter-

preting the "situated in" requirement is *Swan*, supra. In that case the court of appeals discussed the ambiguity in the amendment: whether it was the dealer or the dealership that had to be situated in Wisconsin. The court examined the legislative history and held that "this, then, clearly establishes the legislature's intent to make the WFDL apply exclusively to dealerships that do business within the geographic confines of Wisconsin." *Swan*, 374 N.W.2d at 644. The facts that the dealer, Swan, was actually situated in Wisconsin, incorporated in Wisconsin, and that the contract was negotiated in Wisconsin were considered irrelevant once the court decided that it was the location of the dealership and not the dealer that was relevant. Since *Swan* marketed Schlitz exclusively to overseas markets, with no sales in Wisconsin, its dealership was not situated in Wisconsin. *Swan*, 374 N.W.2d at 644. Thus, the test for "situated in" established by the Wisconsin Court of Appeals, is whether the dealership is doing business within the geographic confines of Wisconsin. The only other Wisconsin case to discuss the meaning of "situated in" is *Maningas*, which was previously discussed and dismissed as a source of guidance.

In *Speed Queen*, supra, a federal district court considered whether the plaintiff was situated within Wisconsin under the WFDL. In this case the plaintiff's territory included all of Minnesota and the western part of Wisconsin. The majority of the sales were in Minnesota. The court held that the plaintiff dealership was situated in Wisconsin and the WFDL would apply to the dealership, finding the following factors relevant:

> First, while the majority of plaintiff's sales are in Minnesota, its distributorship includes a substantial portion of the state of Wisconsin. Second, the parties have always treated the Minnesota and Wisconsin portions of the territory as a single distributorship. Third, the distributorship agreement entered into between the parties specifically provides that it is to be governed by Wisconsin law.

*Speed Queen*, 611 F.Supp. at 1578, n. 13. In the present case, only two of those three factors are met. In any event, the *Speed*

*Queen* factors are different than the factors discussed in *Swan*, and we will follow *Swan*.

In *Process Accessories*, the district court found that the plaintiff could not claim protection under the WFDL for several reasons, including that it was not situated in Wisconsin. The court said that in the case of a Minnesota corporation, with a principal place of business in Minnesota, which was the grantee of a multi-state dealership from a Massachusetts corporation, most of the dealership was not located in Wisconsin, and therefore it could not pass the "situated in" test. The facts in *Process Accessories* are similar to this case. However, the court merely discussed the issue of "situated in" in passing, since there were so many other reasons to find the WFDL inapplicable that are not present in this case.

The most recent consideration of this issue was in *CSS–Wisconsin Office v. Houston Satellite Systems, Inc.*, 779 F.Supp. 979 (E.D.Wis.1991). Plaintiff was an Indiana corporation, with its principal place of business in Indiana and branch offices in Wisconsin and five other states. They distributed for defendant, a Texas corporation with its primary place of business in Colorado. The contract, negotiated and signed in Indiana and Colorado, specified the application of Texas law. Although earlier agreements had different arrangements, their latest agreement required that all distribution be done through CSS's only "full-service" center, which was in Wisconsin, although there were sales to other states from this facility. All shipments from the defendant went to Wisconsin. All management decisions and payments went through plaintiff's Indiana office. There were much greater contacts with Wisconsin than in this case, and the court held that Wisconsin law would apply. In determining whether Wisconsin law could apply to this case, the discussion of "situated in" in *CSS* is helpful.

The court in *CSS* noted that *Swan* defined "situated in" as doing business in, and not as residence or state of incorporation. The court further pointed out that the *Swan* court did not set a minimum degree of business activity necessary to be

"doing business in" Wisconsin, but merely said that Swan had done *none*. Therefore, the court found that CSS was situated in Wisconsin for WFDL purposes.

In light of these cases, it appears that Wisconsin courts would find Diesel to be "situated in" Wisconsin. They clearly "do business" in Wisconsin, unlike the dealer in *Swan*. While most of the dealership is not located in Wisconsin, clearly a part of the dealership is. There is nothing in *Swan*, however, to support splitting dealerships up, and having the WFDL apply to only a part.

IV. *Conclusion*

While the WFDL could apply to this relationship if, under Wisconsin choice of law rules, Wisconsin law were held to apply, Wisconsin has no special interest in applying its law to this case. All considerations—both the contacts of § 188 and the choice influencing factors of *Heath*—weigh in favor of Minnesota law. In such a case, Wisconsin's desire to apply its own law to this case, as expressed by the WFDL, is not justified by Wisconsin's limited interest in the case. Finally, even when this factor is weighed on the side of Wisconsin, it simply does not outweigh the other significant factors that weigh towards application of Minnesota law. The grant of summary judgment is, therefore, affirmed.